Kevin S. Wiley, Sr.
State Bar No. 21470700
Kevin S. Wiley, Jr.
State Bar No. 24029902
**The Wiley Law Group, PLLC**
325 N. St. Paul Street, Suite 2250
Dallas, Texas 75201
Tel. (214) 537-9572
Fax (972) 449-5717
Email: Kwiley@wileylawgroup.com
**PROPOSED COUNSEL FOR DEBTORS,
CITY-WIDE COMMUNITY DEVELOPMENT CORP;
LANCASTER URBAN VILLAGE COMMERCIAL, LLC;
LANASTER URBAN VILLAGE RESIDENTIAL, LLC.**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| **CITY-WIDE COMMUNTY** | § | |
| **DEVELOPENT CORP.;** | § | |
| **LANCASTER URBAN VILLAGE RES.** | § | |
| **LLC;** | § | |
| **LANCASTER URBAN COMMCL.** | § | Case No. 21-30847-MVL-11 |
| **LLC** | § | |
| | § | **PENDING PROCEDURAL** |
| | § | **CONSOLIDATION** |
| **CONSOLIDATED DEBTORS** | § | |

### DECLARATION OF KEVIN S. WILEY, SR. OF THE WILEY LAW GROUP, PLLC IN SUPPORT OF VOLUNTARYPETITIONS, FIRST DAY MOTIONS AND DESIGNATIONAS COMPLEX CHAPTER 11 CASE

Pursuant to 28 U.S.C. § 1746, KEVIN S. WILEY, SR., PROPOSED COUNSEL FOR DEBTORS, declares as follows:

I, **KEVIN S. WILEY, SR.,** being duly sworn, declare the following under penalty of perjury:

1.  My name is Kevin S. Wiley, Sr.

2.  I am the lead attorney member of the Wiley Law Group, proposed counsel for Community Development Corporation, and its 100% owned affiliates, Lancaster Urban Village Residential, LLC, and Lancaster Urban Village Commercial, LLC ("Debtors").

3. My business address and telephone numbers are as follows:

**WILEY LAW GROUP, PLLC**
**325 N. ST. PAUL, STE. 2250**
**DALLAS, TEXAS  75201**
**(214) 537-9572**
**KWILEY@WILEYLAWGROUP.COM**

4. I submit this Declaration based on personal knowledge in support of (a) the voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") filed by CITY-WIDE COMMUNITY DEVELOPMENT CORPORATION ("CWCDC," together with LANCASTER URBAN VILLAGE RESIDENTIAL, LLC ("RESIDENTIAL") AND LANCASTER URBAN VILLAGE COMMERCIAL, LLC ("COMMERCIAL"), also known as the "Subsidiary Debtors," and, together with CWCDC the "Debtors" ) on April 30, 2021 (the "Petition Date"); (b) the *Notice of Designation as Complex Chapter 11 Case* (the "Notice"); and (c) the following motions:

A. Emergency Motion for Joint Administration; (Dkt. #6).

B. First Amended Emergency Motion to (A) Permit Filing of Consolidated Creditor Matrix and Consolidated Mailing List, and (B) Implement Certain Notice Procedures; (Dkt. #14).

C. Emergency Motion for An Order Authorizing (A) Payment of Pre-Petition Wages, Salaries, and Payroll Taxes; (B) to Reimburse Employees for Pre-Petition Business Expenses; and (C) Honoring Existing Benefit Plans and Policies in the Ordinary Course of Business; (Dkt. #8).

D. Emergency Motion Authorizing (A) Continued Workers' Compensation, Liability, Property, and Other Insurance Programs; (B) Payment of All Obligations in Respect Thereof; and (C) the Ability to Enter into Premium Financing Agreements in the Ordinary Course of Business; (DKT. #9).

E. Emergency Motion to (A) Authorize the Debtors to Make Adequate Assurance of Payments to Utilities; (B) Prohibit Utilities from Altering, Refusing, or Discontinuing Services; and (C) Establish Procedures for Resolving Requests for Additional Assurance of Payment; (Dkt. #13).

    F. Emergency Motion to Authorize Payment of Pre-Petition Taxes and Related Obligations; and Continue Such Payments Post-Petition in the Ordinary Course of Business; (Dkt. #

    G. Emergency Motion to Use of Cash Collateral. (Dkt. # 11).

    H. Emergency Motion for Cash Management. (Dkt. # 12).

The foregoing are collectively the "<u>First Day Motions</u>."

    5.    I further submit this Declaration to assist the Court and parties-in-interest inunderstanding the circumstances that compelled the commencement of the Debtors' Chapter 11 cases (collectively, the "<u>Cases</u>").

    6.    The relief sought in the Notice and First Day Motions should enable the Debtors to effectively administer their estates. I have reviewed the Notice and First Day Motions, and I believe the requested relief is necessary to continue operations of the CWCDC enterprise and, as much as possible, preserve of value of the assets held by the business.

**NOTICE OF DESIGNATION AS COMPLEX CHAPTER 11 CASE**

    7.    I submit that these cases qualify for treatment as complex Cases.

    8.    There is more than $10 million in debt and numerous tenants in multiple projects subject to executory contract assumptions.

    9.    The Debtors also have a significant need for simplification of noticing and hearing processes to reduce delays and expense. In that regard , the numerous tenants under all projects should be only provided with minimal notice, since other than routine lease deposits, there is no creditor relationship, and these tenants are unimpacted by these proceedings since all leases will be assumed without modification.

### A. Emergency Motion for Joint Administration.

10. I am asking that the Court jointly administer the Debtors' Cases for procedural purposes only pursuant to Bankruptcy Rule 105(b) and Local Rule 1015(b). Joint administration of the Cases will be an efficient use of this Court's and the Debtors' resources. Numerous matters affecting all of the Debtors can be handled by the use of combined notice, motion, order, or hearing. Joint administration will permit the use of a single, general docket for the Cases and combine notices to creditors and other parties-in-interest of the Debtors' respective estates.

11. The rights of the respective creditors of each of the estates will not be prejudiced by the joint administration of the Cases because the relief sought is procedural in nature and is not intended to affect substantive rights. Each creditor will be entitled to file a proof of claim against the particular estate in which it allegedly has a claim. All schedules of assets and liabilities and statements of financial affairs will be captioned and filed in each of the Debtors' respective Cases, as appropriate.

12. Finally, I am asking the Court to authorize the Debtors to file the monthly operating reports required by the U.S. Trustee Operating Guidelines on a consolidated basis, which will promote efficiency and reduce costs.

### B. Emergency Motion to (A) Permit Filing of Consolidated Creditor Matrix and Consolidated Mailing List, and (B) Implement Certain Notice Procedures.

13. I am requesting that the Court approve the Debtors' use of a Master Service List, updated periodically, as appropriate, and sufficient notice in these Cases. The Debtors have identified approximately 500 persons and/or entities to whom notice must be given

under the Bankruptcy Code, the Bankruptcy Rules, and/or the local rules, consisting primarily of the aforementioned tenants. Compliance with such notice would be extremely burdensome to the Debtors, costly to their estates, and, in many instances, unnecessary as again, these tenants are not adversely affected by this case.

14. Approval of the notice procedures would afford due and adequate notice to all parties-in-interest and will not impair the right of a party whose interest is directly affected by a particular matter to receive all filings related to that matter. It would also promote the Debtor reorganization efforts by preserving estate assets that would otherwise be consumed by unnecessary copying, postage, and related expenses. Accordingly, approval of the proposed notice procedures would be is in the best interest of the Debtors' estates.

    **C.** **Emergency Motion for an Order Authorizing (a) Payment of Pre-Petition Wages, Salaries, and Payroll Taxes (b) Reimbursement of Employees Prepetition Business Expenses, and (C) Honoring of Existing Benefit Plans and Policies in the Ordinary Course of Business (the "Wage Motion").[1]**

15. The Debtors' workforce consists of now only 2 full-time employees, including both hourly and salaried employees.

16. As I understand, the Debtors may not pay pre-petition wages and other employee claims absent specific court authorization. I am asking the Court to authorize: (a) payment of pre-petition wages due to the Debtors employees, whether accrued or currently due and payable; (b) reimbursement of employees prepetition business expenses; and (c) the honoring of any pre- petition employee benefit obligation, including but not limited to,

---

[1] All capitalized terms used in this Section not expressly defined in this Declaration shall have the same meaning as ascribed in the Wage Motion, which is incorporated herein by reference.

insurance payments, 401(k) matches, cell phone plans, credit cards, and any benefit premiums incurred in connection with such benefits and programs, and continue paying those obligations and all fees and costs incidentthereto, including amounts owed to third-party administrators, governmental authorities, and continue administering all of the benefit obligations and programs in the ordinary course of business. I further seek an order directing all relevant banks and financial institutions to receive,process, honor, and pay any checks, electronic fund transfers, and automatic payroll transfers drawn on the Debtors' bank accounts, whether such checks were presented, or fund transfer requests were submitted before or after the Subsidiary Petition Date. The requested relief seeks to minimize the personal hardship on the Employees if they are not paid when due, and to maintain the morale of their essential workforce at this critical time. The Debtors' Employees are central to the Debtors' continued operation. Due to the potential for irreparable harm if the employee obligations and programs are not paid or maintained, I am seeking authority for the Debtors to pay all such obligations as they become due in the ordinary course of business.

17. The Debtors ordinarily pay Employees bi-weekly . The standard work week for Full-Time Employees is 40 hours, with some employees working more or less than the standard number of hours during any given week. Payroll is directly deposited into the Employees' respective bank accounts. One day before every payday, CWCDC withdraws an amount calculated to cover all Compensation Obligations from the CWCDC Operating Account.

18. In addition, during each pay period, the Debtors make a deduction from the Employees' pay for certain obligations, including, but not limited to, federal and state income

taxes, federal and state unemployment and disability taxes, social security, and Medicare taxes (collectively, the "Payroll Tax Obligations") and subsequently remit the amount withheld to the appropriate governmental authorities. The company expenses for the Payroll Tax Obligations for the most recent pay period was $668.75. To my knowledge, the Debtors are current with respect to Payroll Tax Obligations through the Petition Date.

19. The Debtors, in the ordinary course of business, reimburse Employees for a variety of expenses incurred in the course of their employment (the "Reimbursement Obligations"). These Reimbursement Obligations include, among other things, business-related travel, and business-related expenses. The Debtors typically reimburse Employees for business expenses on an as-needed basis via check. At this time, I cannot determine the precise amount of the Reimbursement Obligations at any given time, as Employees may have reimbursable expenses that have not been submitted. For this reason, I seek authorization to satisfy all Reimbursement Obligations and continues the practice of reimbursing Employees for business expenses incurred in the ordinary course.

20. The Debtors offer paid vacation to their Full-time Employees based on the Employees' experience and terms which were individually agreed upon at the time each Employee was hired. Additionally, the Debtors close for business on 10 days throughout the year in recognition of New Year's, Good Friday, Memorial Day, July 4th, Labor Day, Thanksgiving, and Christmas.

21. I believe there are sufficient funds to pay all requested amounts as and when due. The relief requested through the Wage Motion is essential and necessary to prevent immediate and irreparable harm to the Debtors' estates.

  **D.**   **Emergency Motion Authorizing (a) Continued Workers' Compensation, Liability, Property, and Other Insurance Programs; (b) Payment of All**

**Obligations in Respect Thereof; and (c) the Ability to Enter into Premium Financing Agreements** in **the Ordinary Course of Business (the "<u>Insurance Motion</u>").**

22. The Debtors request by this motion authorization to (i) continue or renew various Insurance Programs (as defined in the motion) and to honor their undisputed obligations thereunder; and (ii) enter into Premium Financing Obligations in the ordinary course of business. The Debtors also seek an order authorizing either the relevant banks or, where applicable, the Debtors' personnel management services company, to receive, honor, process, and pay any and all checks drawn, or electronic fund transfers requested or to be requested, on the Debtors' bank accounts to the extent that such checks or electronic fund transfers relate to any Insurance Obligations. The requested relief is essential to the Debtors' businesses and operations. The nonpayment of any premiums, deductibles, or related fees under any of the Insurance Programs could result in their termination. In addition, to my understanding, the guidelines established by the United States Trustee for the Northern District of Texas mandate that the Debtors remain current with respect to certain of their primary Insurance Programs.

23. In connection with the operation of their businesses, the Debtors maintain several insurance programs, including, workers' compensation, general liability, and property insurance programs, which provide the Debtors with insurance coverage for claims relating to, among other things, workers' compensation, automobile losses and liability, and general liability. A table of the Debtors' Insurance Programs detailing the Debtors' insurance coverage and the amounts owed by the Debtors in connection with such coverage, or the policy declarations including premium detail, is attached as **Exhibit A** to the Insurance Motion.

24. The Debtors do not procure workers' compensation insurance.

25. The Debtors procure certain general liability and automobile insurance through various companies listed in the Exhibit A. The Debtors are required to pay, either directly or through the Debtors' insurance brokers, premiums in connection with their general liability and automobile insurance coverage, as well as premiums for coverage under the other Insurance Programs. The Insurance Premiums are based upon a fixed rate established and billed by each Insurance Carrier. The premiums for some of the Insurance Programs are determined annually and are paid at the inception of each policy. Some of the Insurance Programs are paid on a monthly basis. The Debtors also have various deductible and co-insurance obligations that are paid based on the amount of claims made against the Insurance Programs, and that are calculated in accordance with the applicable Insurance Program.

26. The nature of the Debtors' businesses and the extent of their operations make it essential to maintain their Insurance Programs on an ongoing and uninterrupted basis. The nonpayment of any premiums, deductibles, or related fees under any of the Insurance Programs could result in one or more of the Insurance Carriers terminating their existing policies, declining to renew their insurance policies, or refusing to enter into new insurance agreements in the future.

**E.  Emergency Motion to (a) Authorize Adequate Assurance of Payments to Utilities; (b) Prohibit Utilities from Altering, Refusing, or Discontinuing Services; and (c) Establish Procedures for Resolving Requests for Additional Assurance of Payment (the "<u>Utility Motion</u>").[2]**

27. I am requesting that the Court authorize the Debtors to make adequate

---

[2] All capitalized terms used in this Section not expressly defined in this Declaration shall have the same meaning as ascribed in the Utility Motion and incorporated herein by reference.

Page **9**

assurance payments to utility companies currently providing or that will provide services to the Debtors, prohibiting the utility companies from altering, refusing, or discontinuing services to the Debtors on account of the bankruptcy filing or the non-payment of pre-petition amounts owed and establishing certain procedures for resolving utility company requests for additional assurance of payment.

28. Numerous companies provide the Debtors with traditional utility services, such as telephone and communication services, electricity, water, gas, and other similar services that are necessary for the continued operation of the Debtors' day-to-day operations. A list of all identified utility companies for each Debtor will be attached as **Exhibit A** to the Utility Motion as of the date of the hearing. To my knowledge, the Debtors have been current for the last five years on all utility bills. Also, to my knowledge, all pre-petition security deposits have been returned by the utility companies. As of the Petition Date, no defaults or arrearages with any utility company exist and upon information and belief, no outstanding amounts are owed to any utility company. On average, the Debtors' current aggregate monthly utility usage is detailed in par. 7 of the Motion.

29. Uninterrupted utility services are critical to the Debtors' ability to operate and maintain the value of their businesses and to maximize value for the benefit of their creditors. The Debtors cannot operate their businesses without utility service. The Debtors' businesses and operations rely heavily on the smooth functioning of their properties and timely payment of their Utility Companies. If any identified utility company refused or discontinued service, the Debtors could be forced to cease operations. Such an interruption would substantially disrupt operations and result in loss of revenues, which could irreparably harm and jeopardize the sale of the Debtors' assets, the reorganization efforts, and other objectives of the Debtors.

I believe that the relief requested in the Utility Motion is necessary to avoid immediate and irreparable harm to theDebtors.

30. The Debtors have proposed adequate assurance of payment to each identified Utility Company. I believe that in most cases, payment of additional amounts above the proposed Adequate Assurance is unnecessary. The Debtors have a good payment history with all of the Utility Companies and have a long history of timely payment to these entities.

31. I anticipate that the cash flow from operations, cash on hand, and the assets described in this declaration will be sufficient to pay all post-petition obligations to the Utility Companies.

**F. Emergency Motion to Authorize the Payment of Pre-Petition Taxes and Related Obligations; and Continue Such Payments Post-Petition in the Ordinary Course of Business (the "<u>Tax Motion</u>").[3]**

32. The Debtors seek authority, but not direction, to pay pre-petition taxes, including federal, state, and local severance taxes, employment withholding, payroll and unemployment taxes, franchise and/or income taxes, licensing fees, and all other applicable taxes to the respective taxing authorities. The request is without prejudice to the Debtors' right to contest theamounts of any taxes on any ground they deem appropriate. Additionally, the Debtors seek authority to pay these pre-petition taxes for which the applicable payment was remitted but had not cleared the Debtors' bank accounts as of the Petition Date.

33. The relief is being requested as certain taxes may constitute "trust fund" taxes andthus are not property of the Debtors' estates, and the failure to pay certain taxes could result in a lien being placed on the Debtors' property and/or such taxes constitute

---

[3] All capitalized terms used in this Section not expressly defined in this Declaration shall have the same meaning as ascribed in the Tax Motion, which is incorporated herein.

priority claims. The failure to pay the Taxes could disrupt the Debtors' operations and reorganization efforts and impair their successful reorganization. As such, the immediate payment of the Taxes is in the best interest of the Debtors, their estates, and creditors.

34. To my knowledge, in the ordinary course of business, and as part of their operations, the Debtors incur or collect various Taxes, including, but not limited to Employment Taxes, Franchise Taxes, and other taxes. A list of Taxing Authorities will be attached as **Exhibit A** to the Tax Motion by the date of the hearing. The Debtors are not seeking authority to pay property taxes as part of its 'first day' motions.

35. The Debtors draw upon funds in their bank accounts to satisfy obligations arising from the Taxes and Licensing Fees. The Debtors, through their internal management pay various Employment Taxes assessed by different entities for such items, including, but not limited to, federal unemployment, Medicare, Social Security, and applicable state unemployment taxes.

36. To my knowledge, the Debtors have sufficient liquidity to pay such amounts as they become due in the ordinary course of business. The relief sought in the Tax Motion is necessary to the continued operation of the Debtors' businesses and preserve the value of the Debtors' estates.

G.     **Emergency Motion Authorizing Interim Use of Cash Collateral**

37. Debtors seek by an emergency motion interim authority to continue to use cash collateral of the named secured creditors therein with terms for adequate protection as provided with replacement liens on proceeds from rents and off-springs of their various properties.

H.     **Emergency Motion Authorizing Retention of Existing Cash Management Systems**

38. Debtors depend on numerous management companies to manage their projects,

collecting rents, making ordinary and necessary operational expense payments for utilities, services, and maintenance, and reporting their operations with detailed operational reports which will be included in Debtor's monthly operating report. Debtors seek to maintain their bank accounts that receive electronic transfers of net funds after operations, so as to prevent confusion with their current operations.

## CONCLUSION

39. Approval of the First Day Motions is in the best interest of the Debtors, their estates, and their creditors.

40. T have reviewed this Declaration and hereby declare under penalty of perjury that the foregoing is true and correct and within my own personal knowledge.

Executed this 10th day of MAY 2021.

_____
KEVIN S. WILEY, SR.

STATE OF TEXAS § 
§ ss:
COUNTY OF DALLAS §

Sworn to and subscribed before me this __May__ day of __10th__ 2021.

_____
Notary Public

My Commission Expires: 8/12/23

CLAUDIA DILLINGHAM MEZA
Notary Public, State of Texas
Comm. Expires 08-12-2023
Notary ID 132125323