

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 26, 2021**

_____
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **CITY WIDE COMMUNITY** | § | **CASE NO. 21-30847-MVL-11** |
| **DEVELOPMENT CORP.** | § | |
| *ET AL.* | § | |
| | § | |
| **DEBTORS** | § | **JOINTLY ADMINISTERED** |

_____

**ORDER (A) APPROVING BIDDING PROCEDURES, (B) SCHEDULING**
**BID DEADLINE, AUCTION DATE, AND SALE HEARING AND APPROVING**
**FORM AND MANNER OF NOTICE THEREOF, (C) APPROVING PROCEDURES FOR**
**THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES AND THE FORM AND MANNER OF NOTICE THEREOF, AND**
**(D) GRANTING RELATED RELIEF IN CONNECTION WITH**
**THE DEBTORS' SALE OF LANCASTER URBAN VILLAGE**

Upon the motion (the "Motion") [Docket No. 157],[1] filed by City Wide Community

Development Corporation, Inc. ("CWCDC"), Lancaster Urban Village Commercial, LLC

("LUVC"), and Lancaster Urban Village Residential, LLC ("LUVR", and together with CWCDC

_____
[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Motion.

and LUVC, the "Debtors"), for entry of one or more orders (I) (A) approving bid procedures, (B) scheduling a bid deadline, auction date, and sale hearing, and approving the form and manner of notice thereof, (C) approving procedures for the assumption and assignment of executory contracts and unexpired leases and the form and manner of notice thereof; and (II) (A) approving the sale of substantially all of the Debtors' assets to the extent constituting Lancaster Urban Village[2] (the "Sale Assets" and any such proposed sale of the same, the "Proposed Sale") free and clear of all liens, claims, interests, and encumbrances, (B) authorizing the assumption and assignment of executory contracts and unexpired leases, and (C) granting related relief, relating to the Debtors' proposed sale of substantially all of the Debtors' interests in Lancaster Urban Village[3]; and the Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334; and this being a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O); and it appearing that notice of the Motion and of the hearing on the request for approval of the Bidding Procedures (attached hereto as **Exhibit 2**) and for approval of the procedures relating to the assumption and assignment of the Assumed Contracts and determination of the proposed cure amounts relating thereto was sufficient under the circumstances, and that no other or further notice is required; and the Court

---

[2] As used herein, the assets of Lancaster Urban Village include only the following: (i) the real estate owned or leased by CWCDC, LUVR, and LUVC set forth in the legal descriptions attached hereto as **Exhibit 1** (collectively, the "Real Estate"), (ii) all personal property located at or relating to the Real Estate (the "Personal Property"), (iii) all contracts and leases relating to the Real Estate and/or the Personal Property and/or the operation or management thereof (the "LUV Contracts"), (iv) the membership interests in LUVR and LUVC owned by CWCDC (the "Membership Interests"), and (iv) all claims and causes of action relating to the Real Estate, the Personal Property, the LUV Contracts or the Membership Interests, but excluding (a) any claims or causes of action arising under Sections 544, 548, 549, or 550 of the Bankruptcy Code, and (b) any claims and causes of action against the Debtors' current or former officers, directors, managers, members, or other fiduciaries for any breaches of fiduciary duty owed to any of the Debtors.

[3] For the avoidance of all doubt, to the extent that the Proposed Sale includes a Loan Assumption (as defined in the Bidding Procedures), the Proposed Sale will not be free and clear of LUVR's obligations to W&D and HUD (each as defined herein), including any and all obligations under the Note dated as of September 1, 2012, the Regulatory Agreement for Multifamily Projects dated as of September 1, 2012, and the Multifamily Deed of Trust, Assignment of Leases and Rents and Security Agreement dated as of September 1, 2012 each of which was executed by LUVR for the benefit of W&D and/or HUD, and all other HUD statutes, regulations, rules, policies, procedures, and requirements in HUD handbooks, guides, notices and mortgagee letters that apply to W&D's loan to LUVR, which has been endorsed for insurance by HUD.

having determined that the relief requested in the Motion is in the best interests of the Debtors and their estates, and good and sufficient cause having been shown, the Court hereby further finds as follows:

A. The Debtors have demonstrated good and sufficient reasons for (i) approving the Bidding Procedures, (ii) approving the manner of notice of the Motion, and establishing the Bid Deadline, the Auction, the Sale Hearing, and the assumption and assignment of the Assumed Contracts and proposed cure relating thereto (each term as defined herein), and (iii) scheduling the Sale Hearing.

B. The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the realizable value of the Sale Assets.

**IT IS HEREBY ORDERED THAT**:

1. The Motion (as it pertains to approval of the matters set forth herein) is **GRANTED** as set forth herein. Any objections that have not been previously resolved or withdrawn of record are overruled on the merits.

**Notice Procedures**

2. Within three (3) business days after entry of this Order, the Debtors shall serve copies of the Motion and this Order, including (i) a copy of the legal descriptions for the Real Estate more fully describing the Real Estate attached hereto as **Exhibit 1**, (ii) a copy of the Bidding Procedures attached hereto as **Exhibit 2**, and (ii) the notice of Bid Deadline, Auction, and Sale Hearing substantially in the form attached hereto as **Exhibit 3-A** (the "Sale Notice") (collectively, the "Bid Package"), via first class U.S. mail, postage prepaid, upon the following (collectively, the "Bid Notice Parties"): (a) all potential buyers identified or solicited by the Debtors or Hilco Real Estate, LLC ("Hilco"), the Debtors' proposed real estate agents, and any additional parties who

have expressed an interest to the Debtors or Hilco in potentially acquiring Lancaster Urban Village, (b) the U.S. Trustee; (c) counsel to any statutory committee; (d) counsel to, or in the absence of counsel, directly to (i) Walker & Dunlop, LLC ("W&D"), (ii) the United States Department of Housing and Urban Development ("HUD"), (iii) First Choice Sales & Service ("First Choice" and together with W&D and HUD, the "LUVR Secured Parties"), (iv) the City of Dallas ("COD"), (v) Prosperity Bank, N.A. ("Prosperity"), (vi) ST&H Management, LLC ("ST&H"), (vii) Tax Core, LLC ("Tax Core"), and Catalyst Urban Development LLC ("Catalyst", and together with COD, Prosperity, ST&H, and Tax Core, the "CWCDC Secured Parties") (collectively, the "Secured Parties" and each, a "Secured Party"); (e) counterparties to the Debtors' executory contracts and unexpired leases included in the Sale Assets, other than counterparties to unexpired residential real property leases with LUVR (the "Residential Tenants" and such unexpired residential leases, the "Residential Leases"); (f) any parties that have asserted a lien or security interest against or any other interest in, including, without limitation, preferential purchase rights or rights of first refusal on, the Sale Assets; (g) any taxing authorities related to the Sale Assets; and (h) all parties who have requested notice in these cases.

3.      Within three (3) business days after entry of this Order, the Debtors shall serve all Residential Tenants with notice of the Auction and Sale Hearing substantially in the form attached hereto as **Exhibit 3-B** (the "Residential Tenant Notice").

4.      On or before **August 30, 2021**, the Debtors shall file with the Court an initial schedule of executory contracts and unexpired non-residential leases that may be assumed and assigned as part of the Proposed Sale (the "Potential Assumed Contracts"). Any Proposed Sale of the assets of LUVR shall include the assumption and assignment of all Residential Leases.

5.      Concurrently therewith, the Debtors shall serve a cure notice substantially in the form attached to this Order as **Exhibit 4** (the "Cure Notice") upon each counterparty to the Potential Assumed Contracts (each, a "Counterparty"). The Cure Notice shall identify the amounts, if any, that the Debtors believe are owed to each Counterparty to a Potential Assumed Contract in order to cure any defaults that may exist under such contract (the "Cure Amount"). The Cure Notice shall also state the applicable date, time, and place of the Auction and Sale Hearing, and provide the date and time by which any objection (the "Assumption and Assignment Objection") to (i) the assumption and assignment of the applicable Potential Assumed Contract on the basis of lack of adequate assurance of future performance under Bankruptcy Code section 365(b)(1) and/or 365(f) or (ii) the Cure Amount must be filed and served by the Counterparty.

6.      Prior to the commencement of the Sale Hearing and no later than **October 15, 2021**, the Debtors shall file with the Court a schedule (the "Assumed Contract Schedule") of executory contracts and unexpired non-residential leases identified by the Successful Bidder to be assumed and assigned to it (the "Assumed Contracts"). At the Sale Hearing, the Debtors shall seek authority to assume and assign the Assumed Contracts and the Residential Leases to the Successful Bidder conditioned upon, and effective as of, the closing of the Proposed Sale; *provided, however*, that the Successful Bidder may add or remove any Potential Assumed Contracts from the Assumed Contract Schedule at any time up to the closing of the Proposed Sale. The counterparty to any Potential Assumed Contract that is added or removed from the Assumed Contract Schedule shall be notified of such change by written notice via first class U.S. mail by no later than two (2) business days prior to closing of the Proposed Sale.

7.      Any objections to a proposed Cure Amount set forth in a Cure Notice must be (a) in writing, (b) state the basis for such objection with specificity, (c) conform to the Bankruptcy

Rules and Local Rules of the Northern District of Texas, and (d) be filed with the Bankruptcy Court no later than **4:00 p.m. Central Time on September 24, 2021** (the "Cure Amount Objection Deadline"). Any other objections to a Cure Notice or proposed assumption and assignment of a Potential Assumed Contract shall be filed with the Bankruptcy Court no later than the commencement of the Sale Hearing (the "Assignment Objection Deadline"). The failure to timely file an objection by the Cure Amount Objection Deadline shall be deemed consent to the Cure Amounts, and the failure to timely file an objection by the Assignment Objection Deadline shall be deemed consent to the assumption and assignment of the Potential Assumed Contracts. Any and all objections not timely asserted by the Cure Amount Objection Deadline and/or the Assignment Objection Deadline (as applicable) shall be deemed forever released and waived.

8.      If, at any time after service of the Cure Notice and before closing of the Proposed Sale, the Debtors identify additional Potential Assumed Contracts not included in the initial Cure Notice, the Debtors shall serve a supplemental Cure Notice on the counterparties to such additional Potential Assumed Contracts and such counterparties shall have until the later of (i) the commencement of the Sale Hearing; or (ii) ten (10) days from service of the supplemental Cure Notice to object to inclusion of the additional Potential Assumed Contract on the Assumed Contract Schedule.

**Bidding Procedures and Auction**

9.      The Bidding Procedures attached hereto as Exhibit 2 and incorporated herein by reference as if fully set forth herein, are hereby approved and shall govern the bidding and Auction proceedings.

10.      The Bid Deadline shall be **October 4, 2021 at 4:00 p.m. Central Time** (the "Bid Deadline"), bidders who are determined to be Qualified Bidders will be so notified by **October 6, 2021**, and deposits will be returned to non-Qualified Bidders by **October 8, 2021**.

11.      If two or more Qualified Bids (as defined in the Bidding Procedures) are received, an Auction shall be held on **October 13, 2021** commencing at **10:00 a.m**. **Central Time,** virtually and/or at the offices of Debtors' counsel, Kevin S. Wiley, Sr., The Wiley Law Group, PLLC, 325 N. St. Paul Street, Suite 2750, Dallas, TX 75201 (the "Auction"). As soon as practicable following the conclusion of the Auction (if any), and no later than **October 15, 2021**, the Debtors shall file with the Court a notice setting forth the results of the Auction, including the operative purchase agreement (the "APA") to be approved, with the Assumed Contract Schedule and any other necessary exhibits and schedules, to the extent available.

12.      The Debtors are authorized, after consultation with the Consultation Parties (as defined in the Bidding Procedures), to terminate the bidding process or the Auction at any time if they determine, in their business judgment, that the bidding process will not maximize value for the Debtors' estates, with notice of such termination to be filed of record with the Court.

**Sale Hearing and Objections to the Proposed Sale**

13.      The Court shall commence the Sale Hearing on **October 20, 2021 at 9:30 a.m. Central Time** (the "Sale Hearing") in the United States Bankruptcy Court for the Northern District of Texas, before the Honorable United States Bankruptcy Judge Michelle V. Larson (the

"Bankruptcy Judge"), at which time the Court shall further consider the Motion, the proposed Sale, and confirm the results of the Auction, if any. The Sale Hearing will be conducted as a hybrid electronic hearing. Parties wishing to participate in the Sale Hearing will have the option to participate at a live hearing before the Bankruptcy Judge at the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Courtroom #2, 1100 Commerce Street, Dallas, Texas 75242. Parties wishing to participate in the Sale Hearing telephonically may do so by dialing in at (650) 479-3207 and using access code 160-135-6015. Parties wishing to participate in the Sale Hearing virtually may also participate by WebEx using the following link: https://us-courts.webex.com/meet/larson and by following the instructions set forth on the Bankruptcy Judge's web-page located at https://www.txnb.uscourts.gov/sites/txnb/files/hearings/WebEx%20Hearing%20Instructions%20for%20Judge%20Larson_3.pdf.

14. Except as provided in Paragraph 5 above, objections, if any, to the Motion and the Proposed Sale (a "Sale Objection") shall be filed with the Bankruptcy Court and served on the following parties so as to be actually received no later than **4:00 p.m. Central Time on September 24, 2021** (the "Sale Objection Deadline"): (i) counsel to the Debtors, The Wiley Law Group, PLLC, 325 N. St. Paul Street, Suite 2250, Dallas, TX 75201 (Attn: Kevin S. Wiley, Sr.); (b) the Office of the United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242 (Attn: Nancy S. Resnick); (c) counsel to W&D, Vorys, Sater, Seymour and Pease LLP, Attn: Jeffrey A. Marks and Kari Balog Coniglio, 301 East Fourth Street, Suite 3500, Great American Tower, Cincinnati, OH 45202; (d) First Choice, 3180 Pearson Rd., Memphis, TN 38118; (e) counsel to the United States, Christopher K. VanDeusen and Jason S. Greenwood, U.S. Department of Justice, 1100 L St NW, Room 7532, Washington, DC 20005; (f) counsel to COD, James Richards,

Office of the City Attorney, 1500 Marilla, 7BN, Dallas, TX 75201; (g) Prosperity, 1205 N. Navarro St., Victoria, TX 77901; (h) ST&H, 1508 Sante Fe Dr., #202, Weatherford, TX 76086; (i) counsel to Tax Core, Spector & Cox, PLLC, Attn: Howard Marc Spector, 12770 Coit Road, Suite 850, Dallas, TX 75251; (j) counsel to Catalyst, Locke Lord LLP, Attn: Johnathan W. Young and Stephen J. Humeniuk, 600 Congress Avenue, Suite 2200, Austin, TX, 78701; and (k) counsel to any statutory committee.

15.     The failure to timely file and serve a Sale Objection by the Sale Objection Deadline shall be a bar to the assertion prior to, at, or after the Sale Hearing of any such objection to the Motion, the Proposed Sale, the Debtors' consummation of the Proposed Sale, or the proposed assumption and assignment of any executory contracts or unexpired leases. Failure to file and serve a Sale Objection by the Sale Objection Deadline shall be deemed to be consent to the Sale for purposes of Bankruptcy Code section 363(f) and a waiver of any preferential purchase rights or other similar rights to acquire the Sale Assets.

16.     The Sale Hearing may be adjourned by the Debtors, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment made in open court.

## **Additional Provisions**

17.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise or any Local Rules of this Court, the terms and conditions of this Order are immediately effective and enforceable upon their entry.

18.     Nothing in this Order or the Bidding Procedures waives any rights that any of the Secured Parties may have to object to the Proposed Sale within the time periods established herein.

19.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

20.     The Order shall be binding and inure to the benefit of the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

21.     All time periods set forth in this Order or the Bidding Procedures shall be calculated in accordance with Bankruptcy Rule 9006(a).

22.     To the extent that this Order is inconsistent with the Sale Motion or Bidding Procedures, the terms of this Order shall control.

23.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**\*\*\*\*\*END OF ORDER\*\*\*\*\***

**EXHIBIT 1**

Legal Description
Lancaster Urban Village
4417 South Lancaster Road, Dallas, Texas 75216

## EXHIBIT "1"
Legal Description

TRACT 1:

Residential Master unit as described in that certain Master Condominium Declaration for Lancaster Urban Village Master Condominium located in Dallas County, Texas, made and established on September 10, 2012, recorded September 10, 2012 in/under Instrument No. 201200267000, Real Property Records, Dallas County, Texas, together with the respective appurtenant undivided interest in and to the general and limited common elements; said Declaration encumbering real property being more particularly described by metes and bounds as follows:

PARCEL A:

BEING a tract of land situated in the James Ray Survey, Abstract No. 1214, in the City of Dallas, Dallas County, Texas, and being all of Lots 1 through 7 and all of Lot 5A, Block 30/4328 of Bellevue, an Addition to the City of Dallas, Texas, according to the Map or Plat thereof recorded in Volume 1, Page 475 of the Map Records of Dallas County, Texas (M.R.D.C.T.), being all of Lot 39-A, Block 4326 of Chan B. Patel Subdivision, an Addition to the City of Dallas, Texas, according to the Map or Plat thereof recorded in Volume 83134, Page 5802, M.R.D.C.T., being all of a called 0.41 acre tract of land, conveyed to City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 20080254766 of the Official Public Records of Dallas County, Texas (O.P.R.D.C.T.), all of called Tract 3 (0.427 acre), conveyed to City Wide Community Development Corporation, as evidenced in a General Warranty Deed recorded in Clerk's Instrument No. 201000110606, O.P.R.D.C.T., and being all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Correction General Warranty Deed recorded in Clerk's Instrument No. 201000175399, O.P.R.D.C.T., and all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 200900357118, O.P.R.D.C.T., and all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 200900249777, O.P.R.D.C.T., and all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 200900130593, O.P.R.D.C.T., and all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 200900040956, O.P.R.D.C.T., and all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 200900249778, O.P.R.D.C.T., and all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 200900358452, O.P.R.D.C.T., and being more particularly described by metes and bounds as follows:

BEGINNING at a 3/4-inch iron pipe found for the southeast corner of said Lot 7, Block 30/4328, same being the northeast corner of a tract of land conveyed to A D. Hatley, et ux, as evidenced in a Deed recorded in Volume 68233, Page 1360, D.R.D.C.T., said iron pipe also being on the west right of way line of Lancaster Road (a variable width right of way);

THENCE South 68° 22' 30" West, along the south line of said Lot 7, the south line of aforesaid Lot 1, Block 30/4328, the north line of said A D. Hatley, et ux tract, passing a 3/4-inch iron pipe found for the south common corner of said lots 1 and 7, passing a 1/2-inch iron rod found for the northwest corner of said A D. Hatlet, et ux tract and continuing for a total distance of 350.94 feet to a 5/8-inch iron pipe found for the southwest corner of said Lot 1, same being on the east right of way line of Denley Drive (a called 50' wide right of way), as dedicated in aforesaid Volume 1, Page 475, P.R.D.C.T.;

THENCE North 21° 11' 1O" West, along the east right of way line of said Denley Drive, along the west line of said Lot 1 and along the west line of aforesaid Lots 2, 3 and 4, Block 30/4328, passing a 5/8-inch iron pipe found for the west common corner of said Lots 1 and 2, passing a 1/4-inch iron rod found for the west common corner of said Lots 2 and 3 and passing a 1/4-inch iron rod found for the west common corner of said Lot 3 and 4, continuing for a total distance of 219.11 feet to a 1/2-inch iron rod found for the northwest corner of said Lot 4, same being southwest corner of aforesaid Tract 3 and the southeast corner of Denley Drive as dedicated in Volume 15, Page 349, P.R.D.C.T., said iron rod also being the point of curvature of a curve to the right, from said iron rod a found 5/8-inch iron rod bears South 33° 59' East, 1.51 feet;

THENCE in a northerly direction, continuing along the east right of way line of said Denley Drive, along the west line of said Tract 3, and along the arc of said curve to the right, through a central angle of 26° 52' 00", having a radius of 393.67 feet, a chord bearing of North 07° 44' 35" West, a chord distance of 182.91 feet and an arc length of 184.60 feet to a 1/2- inch capped iron rod found for the point of tangency of said curve;

## EXHIBIT "1"
Legal Description

THENCE, North 05° 41' 25" East, continuing along the east right of way line of said Denley Drive and the west line of said Tract 3, a distance of 96.13 feet to a 5/8-inch "KHA" capped iron rod set for the point of curvature of a curve to the left;

THENCE in a northerly direction, continuing along the east right of way line of said Denley Drive and the west line of said Tract 3, and along the arc of said curve to the left, through a central angle of 00° 49' 39", having a radius of 547.98 feet, a chord bearing of North 05° 16' 35" East, a chord distance of 7.91 feet and an arc length of 7.91 feet to the north corner of said Tract 3, same being on the westerly line of Lot 1, Block N4326 of Urban League Addition, an Addition to the City of Dallas, Texas, according to the Map or Plat thereof recorded in Volume 99104, Page 0140, of the Deed Records of Dallas County, Texas (D.R.D.C.T.);

THENCE South 30° 23' 14" East, departing the east right of way line of said Denley Drive, along the east line of said Tract 3 and the westerly line of said Lot 1, a distance of 37.75 feet to a 5/8-inch "RPLS5587" capped iron rod found for the west common corner of said Lot 1 and aforesaid Lot 39-A;

THENCE North 73° 20' 14" East, along the common line of said Lot 1 and said Lot 39-A, a distance of 262.50 feet to the northeast corner of said Lot 39-A, from said corner a found 5/8-inch "RPLS5587" capped iron rod bears South 73° 22' 19" West, 1.45 feet;

THENCE South 16° 35' 45" East, continuing along the west right of way line of said Lancaster Road and along the east line of said Lot 39-A, a distance of 83.59 feet to a 5/8-inch "KHA" capped iron for set for the point of curvature of a curve to the left;

THENCE in a southerly direction, continuing along the west right of way line of said Lancaster Road and the east lien of said Lot 39-A, and along the arc of said curve to the left, through a central angle of 00° 09' 04", having a radius of 1959.86 feet, a chord bearing of South 16° 40' 17" East, a chord distance of 5.16 feet and an arc length of 5.16 feet to the southeast corner of said Lot 39-A, same being on the north line of aforesaid 0.41 acre tract, from said corner, a found 5/8- inch capped iron rod bears South 49° 14' West, 0.73 feet;

THENCE North 49° 13' 41" East, continuing along the west right of way line of said Lancaster Road and along the north line of said 0.41 acre tract, a distance of 5.48 feet to the northeast corner of said 0.41 acre tract, same being the point of curvature of a non-tangent curve to the left, from said corner, a found 5/8-inch iron rod bears South 26° 48' West, 3.00 feet;

THENCE in a southerly direction, continuing along the west right of way line of said Lancaster Road, along the east line of said 0.41 acre tract and along the arc of said curve to the left, through a central angle of 03° 37' 30", having a radius of 1954.86 feet, a chord bearing of South 18° 29' 39" East, a chord distance of 123.66 feet and an arc length of 123.68 feet to the southeast corner of said 0.41 acre tract, from said corner, a found "X" bears North 60° 04' East, 0.96 feet;

THENCE South 50° 03' 33" West, continuing along the west right of way line of said Lancaster Road and along the south line of said 0.41 acre tract, a distance of 0.13 feet to the northeast corner of aforesaid Lot 5A, Block 30/4328, from said corner, a found 1/2-inch capped iron rod bears South 50° 03' 33" West, 4.40 feet;

THENCE South 21° 35' 46" East, continuing along the west right of way line of said Lancaster Road, along the east line of said Lot 5A and along the east line of aforesaid Lots 5, 6 and 7, Block 30/4328, passing an "X" cut found for the east common corner of said Lots 5A and 5, passing a PK nail found for the east common corner of said Lots 5 and 6 and passing a 3/4-inch iron pipe found for the east common corner of said Lot 6 and 7, continuing for a total distance of 219.00 feet to the POINT OF BEGINNING and containing 3.461 acres (150,789 square feet) of land, more or less.

PARCEL B

BEING a tract of land situated in the James Ray Survey, Abstract No. 1214, in the City of Dallas, Dallas County, Texas, and a portion of Lot 1, Block N4326 of Urban League Addition, an Addition to the City of Dallas, Texas, according to the Map or Plat thereof recorded in Volume 99104, Page 0140 of the Plat Records of Dallas County, Texas (P.R.D.C.T.) and being more particularly described by metes and bounds as follows:

## EXHIBIT "1"
Legal Description

BEGINNING at an "X" cut set for the southeast corner of said Lot 1, Block A/4326, same being in Lancaster Road (a variable width right-of-way);

THENCE South 73° 20' 18" West, departing said Lancaster Road, along the south line of said Lot 1, Block A/4326, passing at a distance of 6.17 feet, a found 5/8-inch iron rod, passing at a distance of 9.81 feet, the northeast corner of Lot 39-A, Block 4326 of Chan B. Patel Subdivision, an Addition to the City of Dallas, Texas, according to the Map or Plat thereof recorded in Volume 83134, Page 5802, P.R.D.C.T., passing at a distance of 11.29 feet, a found 1/2-inch iron rod, continuing along the common line of said Lot 1, Block A/4326 and said Lot 39-A, Block 4326, a total distance of 272.31 feet to a 5/8-inch "RPLS5587" capped iron rod found for the west common corner of said Lot 1 and said Lot 39-A. same being on the easterly line of a called Tract 3, conveyed to City Wide Community Development Corporation as evidenced in a General Warranty Deed recorded in Instrument No. 201000110606, D.R.D.C.T.;

THENCE North 30° 23' 14" West, along the westerly line of said Lot 1, Block A/4326 and the easterly line of said Tract 3, a distance of 37.75 feet to a 5/8-inch "KHA" capped iron rod set for the north corner of said Tract 3, same being on the curving easterly right-of-way line of Denley Drive (a 50' wide right-of-way), said curve being a non-tangent curve to the left;

THENCE in a northerly direction, continuing along the westerly line of said Lot 1, Block A/4326, along the easterly right-of-way line of said Denley Drive and along the arc of said curve to the left, through a central angle of 04° 26' 21", a radius of 547.98 feet, a chord bearing of North 02° 38' 36" East, a chord distance of 42.45 feet and an arc length of 42.46 feet to an "X" cut set for the end of said curve;

THENCE North 73° 38' 42" East, departing the westerly line of said Lot 1, Block A/4326 and the easterly right-of-way line of said Denley Drive, crossing said Lot 1, a distance of 268.45 feet to an "X" cut set for a corner on the easterly line of said Lot 1, same being in said Lancaster Road;

THENCE South 15° 44' 20" East, along the easterly line of said Lot 1, a distance of 75.31 feet to the POINT OF BEGINNING and containing 0.482 of an acre (20,980 square feet) of land, more or less.

NOTE: COMPANY DOES NOT REPRESENT THAT THE ABOVE ACREAGE AND/OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.

TRACT 2:

Leasehold Estate as created and described by that certain Parking Garage Lease, dated September 10, 2012, by and between Lancaster Urban Village Commercial, LLC, a Texas limited liability company and Lancaster Urban Village Residential, LLC, a Texas limited liability company, as evidenced by that certain Memorandum of Parking Lease, dated September 10, 2012, recorded September 10, 2012 in/under Clerk's File No. 201200267007, Real Property Records, Dallas, County, Texas

TRACT 3:

Retail Master Unit as described in that certain Master Condominium Declaration for Lancaster Urban Village Master Condominium located in Dallas County, Texas, made and established on September 10, 2012, recorded September 10, 2012 in/under Instrument No. 201200267000, Real Property Records, Dallas County, Texas, together with the respective appurtenant undivided interest in and to the general and limited common elements; said Declaration encumbering real property being more particularly described by metes and bounds as follows:

PARCEL A:

BEING a tract of land situated in the James Ray Survey, Abstract No. 1214, in the City of Dallas, Dallas County, Texas, and being all of Lots 1 through 7 and all of Lot 5A, Block 30/4328 of Bellevue, an Addition to the City of Dallas, Texas, according to the Map or Plat thereof recorded in Volume 1, Page 475 of the Map Records of Dallas County, Texas (M.R.D.C.T.), being all of Lot 39-A, Block 4326 of Chan B. Patel Subdivision, an Addition to the City of Dallas, Texas, according to the Map or Plat thereof recorded in Volume 83134, Page 5802, M.R.D.C.T., being all of a called 0.41 acre

## EXHIBIT "1"
Legal Description

tract of land, conveyed to City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 20080254766 of the Official Public Records of Dallas County, Texas (O.P.R.D.C.T.), all of called Tract 3 (0427 acre), conveyed to City Wide Community Development Corporation, as evidenced in a General Warranty Deed recorded in Clerk's Instrument No. 201000110606, O.P.R.D.C.T., and being all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Correction General Warranty Deed recorded in Clerk's Instrument No. 201000175399, O.P.R.D.C.T., and all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 200900357118, O.P.R.D.C.T., and all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 200900249777, O.P.R.D.C.T., and all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 200900130593, O.P.R.D.C.T., and all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 200900040956, O.P.R.D.C.T., and all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 200900249778, O.P.R.D.C.T., and all of a tract of land conveyed City Wide Community Development Corporation, as evidenced in a Special Warranty Deed recorded in Clerk's Instrument No. 200900358452, O.P.R.D.C.T., and being more particularly described by metes and bounds as follows:

BEGINNING at a 3/4-inch iron pipe found for the southeast corner of said Lot 7, Block 30/4328, same being the northeast corner of a tract of land conveyed to A. D. Hatley, et ux, as evidenced in a Deed recorded in Volume 68233, Page 1360, D.R.D.C.T., said iron pipe also being on the west right of way line of Lancaster Road (a variable width right of way);

THENCE South 68° 22' 30" West, along the south line of said Lot 7, the south line of aforesaid Lot 1, Block 30/4328, the north line of said A. D. Hatley, et ux tract, passing a 3/4-inch iron pipe found for the south common corner of said lots 1 and 7, passing a 1/2-inch iron rod found for the northwest corner of said A. D. Hatlet, et ux tract and continuing for a total distance of 350.94 feet to a 5/8-inch iron pipe found for the southwest corner of said Lot 1, same being on the east right of way line of Denley Drive (a called 50' wide right of way), as dedicated in aforesaid Volume 1, Page 475, P.R.D.C.T.;

THENCE North 21° 11' 10" West, along the east right of way line of said Denley Drive, along the west line of said Lot 1 and along the west line of aforesaid Lots 2, 3 and 4, Block 30/4328, passing a 5/8-inch iron pipe found for the west common corner of said Lots 1 and 2, passing a 1/4-inch iron rod found for the west common corner of said Lots 2 and 3 and passing a 1/4-inch iron rod found for the west common corner of said Lot 3 and 4, continuing for a total distance of 219.11 feet to a 1/2-inch iron rod found for the northwest corner of said Lot 4, same being southwest corner of aforesaid Tract 3 and the southeast corner of Denley Drive as dedicated in Volume 15, Page 349, P.R.D.C.T., said iron rod also being the point of curvature of a curve to the right, from said iron rod a found 5/8-inch iron rod bears South 33° 59' East, 1.51 feet;

THENCE in a northerly direction, continuing along the east right of way line of said Denley Drive, along the west line of said Tract 3, and along the arc of said curve to the right, through a central angle of 26° 52' 00", having a radius of 393.67 feet, a chord bearing of North 07° 44' 30" West, a chord distance of 182.91 feet and an arc length of 184.60 feet to a 1/2- inch capped iron rod found for the point of tangency of said curve;

THENCE, North 05° 41' 25" East, continuing along the east right of way line of said Denley Drive and the west line of said Tract 3, a distance of 96.13 feet to a 5/8-inch "KHA" capped iron rod set for the point of curvature of a curve to the left;

THENCE in a northerly direction, continuing along the east right of way line of said Denley Drive and the west line of said Tract 3, and along the arc of said curve to the left, through a central angle of 00° 49' 39", having a radius of 547.98 feet, a chord bearing of North 05° 16' 35" East, a chord distance of 7.91 feet and an arc length of 7.91 feet to the north corner of said Tract 3, same being on the westerly line of Lot 1, Block A/4326 of Urban League Addition, an Addition to the City of Dallas, Texas, according to the Map or Plat thereof recorded in Volume 99104, Page 0140, of the Deed Records of Dallas County, Texas (D.R.D.C.T.);

THENCE South 30° 23' 14" East, departing the east right of way line of said Denley Drive, along the east line of said Tract 3 and the westerly line of said Lot 1, a distance of 37.75 feet to a 5/8-inch "RPLS5587" capped iron rod found for the west common corner of said Lot 1 and aforesaid Lot 39-A;

## EXHIBIT "1"
Legal Description

THENCE North 73° 20' 14" East, along the common line of said Lot 1 and said Lot 39-A, a distance of 262.50 feet to the northeast corner of said Lot 39-A, from said corner a found 5/8-inch "RPLS5587" capped iron rod bears South 73° 22' 19" West, 1.45 feet;

THENCE South 16° 35' 45" East, continuing along the west right of way line of said Lancaster Road and along the east line of said Lot 39-A, a distance of 83.59 feet to a 5/8-inch "KHA" capped iron for set for the point of curvature of a curve to the left;

THENCE in a southerly direction, continuing along the west right of way line of said Lancaster Road and the east lien of said Lot 39-A, and along the arc of said curve to the left, through a central angle of 00° 09' 04", having a radius of 1959.86 feet, a chord bearing of South 16° 40' 17" East, a chord distance of 5.16 feet and an arc length of 5.16 feet to the southeast corner of said Lot 39-A, same being on the north line of aforesaid 0.41 acre tract, from said corner, a found 5/8- inch capped iron rod bears South 49° 14' West, 0.73 feet;

THENCE North 49° 13' 41" East, continuing along the west right of way line of said Lancaster Road and along the north line of said 0.41 acre tract, a distance of 5.48 feet to the northeast corner of said 0.41 acre tract, same being the point of curvature of a non-tangent curve to the left, from said corner, a found 5/8-inch iron rod bears South 26° 48' West, 3.00 feet;

THENCE in a southerly direction, continuing along the west right of way line of said Lancaster Road, along the east line of said 0.41 acre tract and along the arc of said curve to the left, through a central angle of 03° 37' 30", having a radius of 1954.86 feet, a chord bearing of South 18° 29' 39" East, a chord distance of 123.66 feet and an arc length of 123.68 feet to the southeast corner of said 0.41 acre tract, from said corner, a found "X" bears North 60° 04' East, 0.96 feet;

THENCE South 50° 03' 33" West, continuing along the west right of way line of said Lancaster Road and along the south line of said 0.41 acre tract, a distance of 0.13 feet to the northeast corner of aforesaid Lot 5A, Block 30/4328, from said corner, a found 1/2-inch capped iron rod bears South 50° 03' 33" West, 4.40 feet;

THENCE South 21° 35' 46" East, continuing along the west right of way line of said Lancaster Road, along the east line of said Lot 5A and along the east line of aforesaid Lots 5, 6 and 7, Block 30/4328, passing an "X" cut found for the east common corner of said Lots 5A and 5, passing a PK nail found for the east common corner of said Lots 5 and 6 and passing a 3/4-inch iron pipe found for the east common corner of said Lot 6 and 7, continuing for a total distance of 219.00 feet to the POINT OF BEGINNING and containing 3.461 acres (150,789 square feet) of land, more or less.

PARCEL B

BEING a tract of land situated in the James Ray Survey, Abstract No. 1214, in the City of Dallas, Dallas County, Texas, and a portion of Lot 1, Block A/4326 of Urban League Addition, an Addition to the City of Dallas, Texas, according to the Map or Plat thereof recorded in Volume 99104, Page 0140 of the Plat Records of Dallas County, Texas (P.R.D.C.T.) and being more particularly described by metes and bounds as follows:

BEGINNING at an "X" cut set for the southeast corner of said Lot 1, Block A/4326, same being in Lancaster Road (a variable width right-of-way);

THENCE South 73° 20' 18" West, departing said Lancaster Road, along the south line of said Lot 1, Block A/4326, passing at a distance of 6.17 feet, a found 5/8-inch iron rod, passing at a distance of 9.81 feet, the northeast corner of Lot 39-A, Block 4326 of Chan B. Patel Subdivision, an Addition to the City of Dallas, Texas, according to the Map or Plat thereof recorded in Volume 83134, Page 5802, P.R.D.C.T., passing at a distance of 11.29 feet, a found 1/2-inch iron rod, continuing along the common line of said Lot 1, Block A/4326 and said Lot 39-A, Block 4326, a total distance of 272.31 feet to a 5/8-inch "RPLS5587'' capped iron rod found for the west common corner of said Lot 1 and said Lot 39-A, same being on the easterly line of a called Tract 3, conveyed to City Wide Community Development Corporation as evidenced in a General Warranty Deed recorded in Instrument No. 201000110606, D.R.D.C.T.;

THENCE North 30° 23' 14" West, along the westerly line of said Lot 1, Block A/4326 and the easterly line of said Tract 3, a distance of 37.75 feet to a 5/8-inch "KHA" capped iron rod set for the north corner of said Tract 3, same being on the

## EXHIBIT "1"
Legal Description

curving easterly right-of-way line of Denley Drive (a 50' wide right-of-way), said curve being a non-tangent curve to the left;

THENCE in a northerly direction, continuing along the westerly line of said Lot 1, Block A/4326, along the easterly right-of-way line of said Denley Drive and along the arc of said curve to the left, through a central angle of 04° 26' 21", a radius of 547.98 feet, a chord bearing of North 02° 38' 36" East, a chord distance of 42.45 feet and an arc length of 42.46 feet to an "X" cut set for the end of said curve;

THENCE North 73° 38' 42" East, departing the westerly line of said Lot 1, Block A/4326 and the easterly right-of-way line of said Denley Drive, crossing said Lot 1, a distance of 268.45 feet to an "X" cut set for a corner on the easterly line of said Lot 1, same being in said Lancaster Road;

THENCE South 15° 44' 20" East, along the easterly line of said Lot 1, a distance of 75.31 feet to the POINT OF BEGINNING and containing 0.482 of an acre (20,980 square feet) of land, more or less.

NOTE: COMPANY DOES NOT REPRESENT THAT THE ABOVE ACREAGE AND/OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.

TRACT 4:

BEING a tract of land situated in the James Ray Survey, Abstract No. 1214, in the City of Dallas, Dallas County, Texas, and being a portion of called Tract 1 (0.562 acre) and all of Tract 2 (1.020 acres), conveyed to City Wide Community Development Corporation, as evidenced in a General Warranty Deed recorded in Clerk's Instrument No. 201000110606 of the Official Public Records of Dallas County, Texas, and being more particularly described by metes and bounds as follows

BEGINNING at a 1/2-inch iron rod found for the northeast corner of Lot 17, Block 29/4327 of Bellevue, an Addition to the City of Dallas, Texas, according to the Map or Plat thereof recorded in Volume 1, Page 475 of the Plat Records of Dallas County, Texas (P.R.D CT), same being the southwest corner of Denley Drive (a called 50' wide right of way) as dedicated in the Final Plat recorded in Volume 15, Page 349, P.R.D.C.T., said iron rod also being the southeast corner of aforesaid Tract 2;

THENCE South 49°13'41" West, departing the west right of way line of said Denley Drive, along the south line of said Tract 2 and the north line of said Lot 17, a distance of 174.40 feet to a 5/8-inch "KHA" capped iron rod found for the southwest corner of said Tract 2, same being the southeast corner of a called 2.05 acre tract of land, conveyed to City Wide Community Development Corporation, as evidenced in a General Warranty Deed recorded in Clerk's Instrument No. 201000253711 of the Official Public Records of Dallas County, Texas;

THENCE North 31°06'37" West, departing the north line of said Lot 17, along the west line of said Tract 2, along the east line of said 2.05 acre tract and generally along a chain link fence, a distance of 271.05 feet to a metal fence corner post marking the southwest corner of the Lisbon Cemetery, same being the northwest corner of said Tract 2;

THENCE North 75°25'54" East, along the north line of said Tract 2 and along a chain link fence marking the south boundary of said Lisbon Cemetery, a distance of 198.75 feet to the point of curvature of a non-tangent curve to the left;

THENCE in a southerly direction, departing the north line of said Tract 2, the chain link fence marking the south boundary of aforesaid Lisbon Cemetery, and along the arc of said curve to the left, through a central angle of 76°04'38", having a radius of 48.79 feet, a chord bearing of South 49°41'46" East, a chord distance of 60.13 feet and an arc length of 64.79 feet to a 5/8-inch "KHA" capped iron rod set for a corner on the curving east line of said Tract 2 and the curving west right of way line of aforesaid Denley Drive, said curve being a non-tangent curve to the left;

THENCE in a southerly direction, along the east lines of said Tract 1, aforesaid Tract 2 and along the west right of way line of said Denley Drive, the following: Along the arc of said curve to the left, through a central angle of 14°59'36", having a radius of 443.67 feet, a chord bearing of South 13°41'22" East, a chord distance of 115.77 feet and an arc length of 116.1O feet to a 5/8-inch "KHA" capped iron rod found for the point of tangency of said curve; South 21°11'1O" East, a

## EXHIBIT "1"
Legal Description

distance of 18.01 feet to the POINT OF BEGINNING and containing 0.986 acres (42,929 square feet) of land, more or less.

Now Known as Lot 2, Block B/4326 of LANCASTER URBAN VILLAGE, PHASE 1, an addition to the City of Dallas, Dallas County, Texas, according to the Map or Plat thereof recorded under Clerk's File No. 201400114474, Map Records, Dallas County, Texas.

TRACT 5:

BEING a tract of land situated in the James Ray Survey, Abstract No. 1214, in the City of Dallas, Dallas County, Texas, and being all of a called 2.05 acre tract of land, conveyed to City Wide Community Development Corporation, as evidenced in a General Warranty Deed recorded in Clerk's Instrument No. 201000253711 of the Official Public Records of Dallas County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at a 5/8-inch "KHA" capped iron rod found for the southwest corner of a called Tract 2 (1.020 acres), conveyed to City Wide Community Development Corporation, as evidenced in a General Warranty Deed recorded in Clerk's Instrument No. 201000110606 of the Official Public Records of Dallas County, Texas, same being the southeast corner of said 2 05 acre tract, same also being on the north line of Lot 17, Block 29/4327 of Bellevue, an Addition to the City of Dallas, Texas, according to the Map or Plat thereof recorded in Volume 1, Page 475 of the Map Records of Dallas County, Texas (M.R.D.C.T.);

THENCE South 70°13'06" West, along the south line of said 2.05 acre tract, continuing along the north line of said Lot 17, along the north line of a 12' wide alley and the apparent north line of Lots 12, 11, 10, 9, 8, 7 and 6, Block 29/4327 of said Bellevue, passing at a distance of 390.55 feet, a found 5/8-inch iron pipe, continuing for a total distance of 404.00 feet to the southwest corner of said 2.05 acre tract;

THENCE North 13°00'43" West, along the west line of said 2.05 acre tract, , passing at a distance of 184.16 feet, a found 5/8-inch iron pipe marking the east common corner of Lots 19 and 20, Block 29/4327 of said Bellevue, continuing for a total distance of 241.50 feet to the northwest corner of said 2.05 acre tract;

THENCE North 68°11'03" East, along the north line of said 2.05 acre tract, passing at a distance of 322.94 feet, a found 1/2-inch iron pipe, continuing for a total distance of 325.38 feet to the northeast corner of said 2.05 acre tract, same being on the west line of aforesaid Tract 2;

THENCE South 31°06'37" East, along the east line of said 2.05 acre tract, the west line of aforesaid Tract 2 and generally along a chain link fence, a distance of 256.36 feet to the POINT OF BEGINNING and containing 2.057 acres (89,599 square feet) of land, more or less.

TRACT 6:

BEING a tract of land situated in the James Ray Survey, Abstract No. 1214, in the City of Dallas, Dallas County, Texas, and being a portion of called Tract 1 (0.562 acre) and a portion of Tract 2 (1.020 acres), conveyed to City Wide Community Development Corporation, as evidenced in a General Warranty Deed recorded in Clerk's Instrument No. 201000110606 of the Official Public Records of Dallas County, Texas, and being more particularly described by metes and bounds as follows:

COMMENCING at a metal fence corner post found for the northwest corner of said Tract 1, same being the occupied northeast corner of Lisbon Cemetery;

THENCE South 08°41'56" East, along the west line of said Tract 1 and a chain link fence marking the east boundary of said Lisbon Cemetery, a distance of 170.43 feet to a 5/8-inch "KHA" capped iron rod set for the POINT OF BEGINNING;

THENCE North 88°18'28" East, departing the west line of said Tract 1 and the chain link fence marking the east boundary of said Lisbon Cemetery, a distance of 35.66 feet to a 5/8-inch "KHA" capped iron rod set for a corner;

THENCE North 01°08'17" East, a distance of 43.79 feet to a 5/8-inch "KHA" capped iron rod set for a corner;

THENCE South 88°51'43" East, a distance of 43.39 feet to a 5/8-inch "KHA" capped iron rod set for a corner on the curving east line of aforesaid Tract 1 and the curving west right of way line of Denley Drive (a 50' wide right of way), said curve being a non-tangent curve to the right;

THENCE in a southerly direction, along the east lines of said Tract 1, aforesaid Tract 2 and along the west right of way line of said Denley Drive, the following:

Along the arc of said curve to the right, through a central angle of 05°12'15", having a radius of 497.98 feet, a chord bearing of South 03°05'17" West, a chord distance of 45.22 feet and an arc length of 45.23 feet to a 5/8-inch "KHA" capped iron rod found for the point of tangency of said curve;

South 05°41'25" West, a distance of 96.13 feet to a 5/8-inch "KHA" capped iron rod found for the point of curvature of a curve to the left;

Along the arc of said curve to the left, through a central angle of 11°52'59", having a radius of 443.67 feet, a chord bearing of South 00°15'05" East, a chord distance of 91.85 feet and an arc length of 92.02 feet to a 5/8-inch "KHA" capped iron rod set for the point of compound curvature of a non-tangent curve to the right;

THENCE in a westerly direction, departing the east line of said Tract 2 and the west right of way line of said Denley Drive, and along the arc of said curve to the right, through a central angle of 76°04'38", having a radius of 48.79 feet, a chord bearing of North 49°41'46" West, a chord distance of 60.13 feet and an arc length of 64.79 feet to a corner on the north line of said Tract 2, same being in a chain link fence marking the south boundary of aforesaid Lisbon Cemetery;

THENCE North 75°25'54" East, along the north line of said Tract 2 and along a chain link fence marking the south boundary of said Lisbon Cemetery, a distance of 0.44 feet to a metal fence corner post marking the southeast corner of said cemetery, same being the southwest corner of aforesaid Tract 1;

THENCE North 08°41'56" West, departing the north line of said Tract 2, along the west line of said Tract 1 and along the chain link fence marking the east boundary of said Lisbon Cemetery, a distance of 151.42 feet to the POINT OF BEGINNING and containing 0.276 of an acre (12,029 square feet) of land, more or less.

Now being a part of Lot 1, Block B/4326 of LANCASTER URBAN VILLAGE, PHASE 1, an addition to the City of Dallas, Dallas County, Texas, according to the Map or Plat thereof recorded under Clerk's File No. 201400114474, Map Records, Dallas County, Texas.

NOTE: COMPANY DOES NOT REPRESENT THAT THE ABOVE ACREAGE AND/OR SQUARE FOOTAGE CALCULATIONS ARE CORRECT.

**EXHIBIT 2**

**BIDDING PROCEDURES**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| CITY WIDE COMMUNITY | § | Case No. 21-30847-mvl-11 |
| DEVELOPMENT CORPORATION, | § | |
| *ET AL.*,[1] | § | |
| | § | |
| Debtors | § | JOINTLY ADMINISTERED |

---

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be used with respect to a sale of certain assets of City Wide Community Development Corporation, Inc. ("CWCDC"), Lancaster Urban Village Residential, LLC ("LUVR"), and Lancaster Urban Village Commercial, LLC ("LUVC" and together with CWCDC and LUVR, the "Debtors") constituting the Sale Assets, as more specifically defined in the Bidding Procedures Order (defined below) (the "Proposed Sale"). The Proposed Sale contemplated by these Bidding Procedures is subject to competitive bidding as set forth herein, approval by the Bankruptcy Court (as defined herein) pursuant to Sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), and with respect to the sale of the assets of LUVR and/or the membership interests of LUVR, subject, in the event of a Loan Assumption (defined herein), to compliance with the Regulatory Agreement for Multifamily Projects dated as of September 1, 2012 (the "HUD Regulatory Agreement") between LUVR and the United States Department of Housing and Urban Development ("HUD") and all other applicable HUD statutes, regulations, rules, policies, procedures, and requirements in HUD handbooks, guides, notices, and mortgagee letters (collectively, the "HUD Requirements"), including, but not limited to, any restrictions and/or prior approvals required with respect to a Loan Assumption and/or any change in control of LUVR and/or the management of its assets.

On August 9, 2021, the Debtors filed their *Motion for One or More Orders (I) (A) Approving Bidding Procedures, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof, (C) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases and the Form and Manner of Notice Thereof; and (II) (A) Approving the Sale of the Debtors' Interests in Lancaster Urban Village Free and Clear of all Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 157] (the "Sale Motion"). On August 25, 2021, the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") entered its *Order (A) Approving Bidding Procedures, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and*

---

[1] The last four digits of the Debtors' tax identification numbers are: City Wide Community Development Corporation ("CWCDC") (8514); Lancaster Urban Village Commercial, LLC ("Commercial") (8989); and Lancaster Urban Village Residential, LLC ("Residential" and together with CWCDC and Commercial, the "Debtors") (1040).

*Approving Form and Manner of Notice Thereof, (C) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases and the Form and Manner of Notice Thereof; and (D) Granting Related Relief In Connection with the Debtors' Sale of Lancaster Urban Village* [Docket No. ⬜] (the "Bidding Procedures Order") approving these Bidding Procedures.

The Bidding Procedures set forth herein describe, among other things, the manner in which bidders and bids become "Qualified Bidders" and "Qualified Bids," respectively, the receipt and negotiation of bids received, the conduct of any Auction (as defined herein), the ultimate selection of the Successful Bidder (as defined herein) and the Bankruptcy Court's approval thereof (collectively, the "Bidding Process").

Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Bidding Procedures Order.

## I.
## Key Dates

The Debtors and Hilco (defined below), have already begun the marketing process. Before being provided with any diligence materials, interested parties must sign and return a confidentiality agreement, in a form acceptable to the Debtors in their sole discretion (a "Confidentiality Agreement"). **Requests for a Confidentiality Agreement should be made to Jeff Azuse, Hilco Real Estate, LLC ("Hilco"), 5 Revere Drive, Suite 410, Northbrook, IL 60062, jazuse@hilcoglobal.com, (847) 418-2703.** Once an interested party signs and returns a Confidentiality Agreement, it will receive access to an electronic data room. Further diligence information is set forth in Section VIII, below.

The deadlines and target dates are as follows:

| | |
|---|---|
| Hearing to Approve Bidding Procedures | August 25, 2021 at 1:30 p.m. (CT) |
| Deadline to file initial Cure Notice: | August 30, 2021 |
| Deadline for objections to Sale, including Cure Amounts: | September 24, 2021 at 4:00 p.m. (CT) |
| Deadline to submit bids (the "Bid Deadline"): | October 4, 2021 at 4:00 p.m. (CT) |
| Notifications to Qualified Bidders: | October 6, 2021 |
| Return of Deposit to non-Qualified Bidders: | October 8, 2021 |
| Auction: | October 13, 2021 at 10:00 a.m. (CT) |
| Deadline to file notice of Auction results: | October 15, 2021 |
| Deadline to object to Auction results: | At or prior to the Sale Hearing |

## II.
## Sale of Assets

The Debtors are entertaining bids for a sale of all or substantially all of the Sale Assets. The Debtors may enter into one Proposed Sale or several Proposed Sales with multiple parties, depending upon the bids received. All bids must have a separate and distinct allocation of the purchase price for the portion of the purchase price attributable to the assets owned by each of the Debtors (the "Allocation Requirement"). No bid shall constitute a Qualified Bid or be deemed to satisfy the Allocation Requirement if the purchase price allocation for the assets owned by LUVR does not meet or exceed $14,000,000, or such lesser amount as is sufficient to satisfy in full all obligations of LUVR to Walker & Dunlop, LLC ("W&D")[2], as confirmed by W&D in writing, including any prepayment premium (if applicable) and all costs and expenses, including but not limited to reasonable fees and out-of-pocket expenses of attorneys incurred by W&D. Requests for an estimated payoff statement reflecting the amounts then due and payable to W&D should be made to Jeffrey A. Marks and/or Kari Balog Coniglio, 301 East Fourth Street, Suite 3500, Great American Tower, Cincinnati, OH 45202, jamarks@vorys.com, kbconiglio@vorys.com. A Proposed Sale may include assumption of the obligations to W&D (a "Loan Assumption"), subject to the discretion and approval of HUD and W&D, as partial consideration for the purchase price with respect to the Proposed Sale.

In addition, (i) the Successful Bidder(s) in any Proposed Sale shall assume the assumed liabilities as may be set forth in such Bidder's purchase agreement and (ii) the Debtors shall assume and assign the assumed contracts to such Successful Bidder(s), as may be set forth in any such purchase agreement(s) accepted by the Debtors.

## III.
## "As Is, Where Is"

Any Proposed Sale(s) entered into by the Debtors shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors or their estates, except as may be set forth in a purchase agreement(s) with a Successful Bidder(s) and as approved by the Bankruptcy Court.

## IV.
## Free of Any and All Claims and Interests

Subject to approval by the Bankruptcy Court, any Proposed Sale(s) entered into by the Debtors shall be free and clear of all liens, claims, interests, and encumbrances (collectively, the "Claims and Interests"), with such Claims and Interests to attach to the net proceeds of the sale to the extent such proceeds are not otherwise paid to the Secured Parties (defined below) at closing; provided, however, that in the event of a Loan Assumption, the Proposed Sale shall be made subject to LUVR's obligations to W&D and HUD, including any and all obligations under the Note dated as of September 1, 2012 (the "W&D Note") and the Multifamily Deed of Trust,

---

[2] The amount set forth herein assumes that LUVR has maintained current post-petition payments to W&D and that the Auction, if any, has commenced by September 29, 2021. In the event that LUVR defaults in its post-petition payment obligations to W&D and/or the Auction does not commence as scheduled, the amount necessary to satisfy the Allocation Requirement as to LUVR will be amended through a notice provided by W&D to all Qualified Bidders.

Assignment of Leases and Rents and Security Agreement dated as of September 1, 2012 each of which was executed by LUVR for the benefit of W&D and/or HUD, and all other HUD Requirements.

For the avoidance of all doubt, any Proposed Sale(s) entered into by the Debtors shall be subject to any current deed and use restrictions, zoning and land use regulations, and other similar appurtenances and covenants that run with the land, except to the extent any such restrictions may be released upon payment in full of any debt requiring the imposition of such restrictions. To the extent any proposed APA by any bidder contains, as a condition of sale, the waiver of any use restrictions, and the COD or any other applicable governmental entity determines not to waive such restrictions, the bidder shall be deemed to have removed such condition from its bid. The Debtors agree to use good faith efforts to obtain any requested waiver, provided such efforts do not require the expenditure of more than nominal funds.

## V.
## Participation and Bid Requirements

Any person or entity who wishes to participate in the Bidding Process (a "Potential Bidder") must become a Qualified Bidder. As a prerequisite to becoming a Qualified Bidder, a Potential Bidder must deliver the following documents to (i) Hilco and The Wiley Law Group, PLLC ("Debtors' Counsel"), as professionals for the Debtor; (ii) W&D and HUD, and (iii) counsel to any statutory committee (the "Committee", and collectively with W&D and HUD, the "Consultation Parties"), at the addresses set forth in Section VII below, no later than the Bid Deadline (as defined below), in a form and substance acceptable to Hilco and the Debtors (the "Required Bid Documents"):

(a) Evidence of the Potential Bidder's financial ability to close on the Proposed Sale, in a form and substance acceptable to the Debtors in their discretion in consultation with the Consultation Parties. Such evidence may take the form of, among other things, current audited financial statements, bank statements, evidence of a non-contingent financing commitment, or such other documentation as the Debtors may accept in their discretion, after consultation with the Consultation Parties;

(b) An executed letter stating that the Potential Bidder's offer is irrevocable until immediately following the closing of the sale and setting forth (i) the assets or groups of assets to be purchased, and which includes the proposed consideration (with satisfaction of the Allocation Requirement) and the liabilities (if any) to be assumed, (ii) any assets expected to be excluded from the sale, and (iii) the structure and financing of the Proposed Sale (including, but not limited to, the sources of financing);

(c) A binding, executed, and definitive copy of the form Purchase and Sale Agreement included in Debtors' virtual data room (the "APA"), which shall be in form and substance acceptable to Debtors, W&D, and HUD, together with all schedules thereto marked to show changes to the APA and schedules that the Potential Bidder proposes (a "Marked APA"), including the purchase price in U.S. dollars for each asset or group of assets subject to the applicable bid, with such designation of the purchase price satisfying the Allocation Requirement;

(d) A good faith earnest money cash deposit (the "Deposit") in an amount equal to $250,000 to be held in an escrow account to be identified and established by the Debtors (and subject to increase as set forth below upon designation of the Successful Bidder); provided that none of the Secured Parties shall be required to provide a Deposit with respect to the portion of any bid that is a Credit Bid;

(e) Evidence of corporate authority to enter into the Proposed Sale;

(f) An executed Confidentiality Agreement;

(g) Solely with respect to Potential Bidders including a Loan Assumption as a component of the proposed purchase price, completion of the Certifications of Controlling Participants attached hereto as **Exhibit A**; and

(h) Any additional information reasonably requested by the Debtors.

## VI.
## Qualified Bidders and Qualified Bids

A Potential Bidder (i) who delivers the documents described in Section V above, (ii) whose financial information and credit-quality support or enhancement demonstrate the financial capability of such Potential Bidder to consummate the Proposed Sale if selected as the Successful Bidder, (iii) who the Debtors determine is likely (based on availability of financing, experience, and other considerations) to be able to consummate the Proposed Sale within the time frame provided by the APA or otherwise applicable in the above-captioned chapter 11 cases (the "Cases"), and (iv) whose bid constitutes a "**Qualified Bid**" pursuant to these Bidding Procedures, shall be deemed a "**Qualified Bidder**." The Debtors will determine whether a Potential Bidder is a Qualified Bidder after consultation with the Consultation Parties. On or before **October 6, 2021**, the Debtors will notify Potential Bidders if they are Qualified Bidders and will provide copies of all Qualified Bids to the Consultation Parties. Notwithstanding the requirements of Section V, W&D, HUD, and the City of Dallas ("COD") are deemed to be Qualified Bidders to Credit Bid (defined below) on their respective collateral, to the extent each such party holds a secured claim under Bankruptcy Code Section 506(a).

A bid will be deemed a "Qualified Bid" and considered by the Debtors only if the bid:

(a) is on terms and conditions (other than the amount of the consideration and the particular liabilities being assumed) that are substantially similar to, and are not materially more burdensome or conditional to the Debtors than, those contained in the APA;

(b) contains no contingencies of any type, other than Bankruptcy Court approval of the Proposed Sale and any applicable regulatory conditions, or, solely with respect to a bid including Loan Assumption as a component of the purchase price, the final approval of HUD to the Loan Assumption;

(c) contains an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Debtors and their assets

and businesses prior to making its offer, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the businesses and assets of the Debtors in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtors' businesses or assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the APA or the Marked APA;

(d)     includes a list of assumed contracts and assumed liabilities (if any), and a commitment to consummate the Proposed Sale and the assumption of the assumed liabilities (if any) on or before November 12, 2021, or such later date as may be agreed upon between the Debtors and the Qualified Bidder, and with respect to a Proposed Sale including a Loan Assumption, W&D and HUD;

(e)     identifies each regulatory and third-party approval required for the bidder to consummate the Proposed Sale, if any, and the time period within which the bidder expects to receive such regulatory and third-party approvals;

(f)     discloses (i) the identity of the Potential Bidder and each entity participating in connection with the Potential Bidder (including the identification of any authorized officers, directors, shareholders and/or the ultimate beneficial owners of the Potential Bidder) and the identity of any proposed property management agent, and the terms of such participation, and (ii) any other term sheets and other written or oral understandings between the Potential Bidder and its affiliates on one hand, and any insider (as defined in section 101(31) of the Bankruptcy Code) of the Debtors, on the other; and

(g)     is received on or before the Bid Deadline.

***All bids for a Proposed Sale must provide for payment in cash, in full, upon the closing of the Proposed Sale (other than a Credit Bid or any portion of a bid that proposes a Loan Assumption for the purchase of the assets owned by LUVR, subject to the discretion and approval of HUD and W&D).*** Any bid that does not comply with the above requirements, shall not be deemed to be a Qualified Bid.

Notwithstanding the foregoing, the Debtors shall have the right, in their discretion, after consultation with the Consultation Parties, to entertain bids that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids. A Qualified Bid will be valued, among other things, based upon factors such as the net value provided by such bid, the likelihood and timing of consummating the Proposed Sale in question, the nature and extent of the changes made to the APA, as reflected in the Marked APA, and any other factors that the Debtors may deem relevant to the Proposed Sale. W&D, HUD, and COD shall be deemed Qualified Bidders without regards to the requirements for submission of a Qualified Bid set forth above solely with respect to any Credit Bid.

Between the time the Debtors notify a Potential Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from the respective Qualified Bidder. Without the written consent of the Debtors, a Qualified Bidder may

not modify, amend, or withdraw its Qualified Bid until the conclusion of the Auction, except for proposed amendments to increase the consideration contemplated by the Qualified Bid, or otherwise enhance the terms of the Qualified Bid.

The Debtors reserve the right to cancel, and not conduct, the Auction (as defined below) if the Debtors do not receive any Qualified Bids by the Bid Deadline. In such event, the Debtors will file a Notice of No Auction with the Bankruptcy Court. For the avoidance of all doubt, W&D, HUD, and COD shall have until the open of the Auction to submit a Credit Bid.

By submitting a bid, a Potential Bidder warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder, or agent acting on another's behalf. Such Potential Bidder acknowledges that it will not look to the Debtors or Hilco for the payment of any fee or commission. In addition, the Potential Bidder agrees to be responsible for the payment of any fee, commission, or other compensation payable to any broker, finder, or agent who alleges it has dealt with or through the Potential Bidder.

## VII.
## Bid Deadline and Bid Recipients

A Qualified Bidder (other than W&D, HUD, and/or COD submitting a Credit Bid) who desires to make a bid shall deliver written copies of its bid to each of the following, **no later than 4:00 p.m. Central Time on October 4, 2021** (the "Bid Deadline"):

| 1.   Debtors' Counsel: | 2.   Debtors' Realtor: |
|---|---|
| The Wiley Law Group, PLLC<br>325 N. St. Paul Street, Suite 2250<br>Dallas, TX 75201<br>Attn: Kevin S. Riley, Sr.<br>Email: kwiley@wileylawgroup.com | Hilco Real Estate, LLC<br>5 Revere Drive, Suite 410<br>Northbrook, IL 60062<br>Attn: Jeff Azuse<br>Email: jazuse@hilcoglobal.com |
| 3.   Counsel to Statutory Committee, if any:<br><br>N/A | 4.   Counsel to W&D:<br><br>Vorys, Sater, Seymour and Pease LLP<br>301 East Fourth Street, Suite 3500<br>Great American Tower<br>Cincinnati, Ohio 45202<br>Attn: Jeffrey A. Marks<br>   Kari Balog Coniglio<br>Email: jamarks@vorys.com<br>   kbconiglio@vorys.com |

| **5.**    **Counsel to HUD** | |
|---|---|
| U.S. Department of Justice<br>1100 L St NW, Room 7532,<br>Washington, DC 20005<br>Attn: Christopher K. VanDeusen<br>    Jason S. Greenwood<br>Email: Christopher.K.Vandeusen@usdoj.gov<br>      Jason.S.Greenwood@usdoj.gov | |

## VIII.
## Due Diligence

Following execution of a Confidentiality Agreement, the Debtors shall afford each interested party an opportunity to perform due diligence with respect to the Debtors' businesses and assets. Due diligence access may include management presentations as may be scheduled by the Debtors, on-site inspections of Lancaster Urban Village, and such other matters which an interested party may reasonably request and as to which the Debtors, in their sole discretion, may agree. Hilco shall coordinate all reasonable requests for additional information and due diligence access from interested parties. No due diligence shall continue after the Bid Deadline. The Debtors may, in their discretion, coordinate diligence efforts such that multiple interested parties have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.

**All diligence requests should be made to Jeff Azuse of Hilco via email to jazuse@hilcoglobal.com or by call to (847) 418-2703.**

Each Qualified Bidder shall be deemed to acknowledge and represent that (i) it has had an opportunity to conduct any and all due diligence regarding the Debtors' businesses and assets prior to making its offer, (ii) it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the businesses and assets in making its bid, (iii) it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the business or assets, or the completeness of any information provided in connection therewith, the Bidding Process or the Auction (as defined herein), except, as expressly stated in the definitive agreement with such Successful Bidder approved by the Bankruptcy Court, and (iv) that it has not engaged and will not engage in collusion in connection with the bidding process at any time.

## IX.
## Auction

If the Debtors receive more than one Qualified Bid (including, for this purpose, bids that are not Qualified Bids which the Debtors, after consultation with the Consultation Parties, have determined to consider), an auction (the "Auction") will be held, upon notice to all Qualified Bidders who have submitted Qualified Bids, at **10:00 a.m. Central Time on October 13, 2021,** virtually and/or at the offices of Debtors' Counsel, Kevin S. Wiley, Sr., The Wiley Law Group,

PLLC, 325 N. St. Paul Street, Suite 2750, Dallas, TX 75201, in accordance with the following procedures:

(a) Only the following persons shall be entitled to attend the Auction: (i) professionals and principals or members of the Debtors, (ii) Hilco, (iii) counsel to, and business persons from, each of the Secured Parties; (iv) counsel to the Committee and a Committee representative (if any), (v) the United States Trustee for the Northern District of Texas (the "U.S. Trustee"), and (vi) professionals and principals or members of any Qualified Bidder who has timely submitted a Qualified Bid (collectively, the "Participating Parties"). Only Qualified Bidders will be entitled to make any Subsequent Bids (as defined below) at the Auction.

(b) At the commencement of the Auction, Qualified Bidders in attendance will be informed of which Qualified Bid or combination of Qualified Bids the Debtors believe to be the highest or otherwise best offer(s), and from which bidding will begin.

(c) All Participating Parties shall be entitled to be present for all Subsequent Bids with the understanding that all material terms of each Subsequent Bid shall be fully disclosed to all Participating Parties throughout the entire Auction.

(d) The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids) for conducting the Auction, *provided that* such rules are not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith, and after consulting with the Consultation Parties regarding the same.

(e) Bidding at the Auction shall begin with the highest or otherwise best Qualified Bid or combination of Qualified Bids as identified by the Debtors at the onset of the Auction (the "Baseline Bid"). Thereafter, the minimum bidding increment (the "Subsequent Bids" and each a "Subsequent Bid") shall be in minimum increments of $100,000 (which increments may be increased or decreased by the Debtors, in their discretion, in consultation with the Consultation Parties). The Auction shall continue in one or more rounds of bidding, and each Qualified Bidder must present a Subsequent Bid during such round to continue in the Auction. The Auction shall conclude after each Participating Party has had the opportunity to submit one or more additional Subsequent Bids with full knowledge and written confirmation of the then-existing highest bid or bids. If a Qualified Bidder, having the opportunity to do so, declines to make a Subsequent Bid during a round, such Qualified Bidder will be deemed to have withdrawn from the Auction.

The Debtors reserve the right, in the exercise of their business judgment in consultation with the Consultation Parties, to adjourn the Auction at one or more times to, among other things (i) facilitate discussions among the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) allow Qualified Bidders the opportunity to provide the Debtors with such additional information or evidence, as the Debtors may require in the exercise of their business judgment in consultation with the Consultation Parties, that the Qualified

Bidder has sufficient resources and sufficient non-contingent debt and/or equity funding commitments to consummate the Proposed Sale at the then-prevailing Subsequent Bid amount.

The Debtors shall maintain a transcript of the proceedings at the Auction, including the Baseline Bid, all Subsequent Bids, and the Successful Bid (as defined below).

## XI.
## Closing of Auction and Selection of Successful Bid

The Auction shall continue until there is only one bid that the Debtors determines, in their business judgment, after consultation with the Consultation Parties, is the highest or otherwise best Qualified Bid for a Proposed Sale or multiple Proposed Sale(s), after considering factors such as the speed and certainty of consummating the transaction (such bid being the "Successful Bid" and the bidder making such bid, the "Successful Bidder"). The Debtors shall file either a notice of no auction, or a notice of Successful Bid identifying the Successful Bidder and including a copy of the Successful Bid as soon as practicable after conclusion of the Auction, and not later than October 15, 2021. Such notice, in the event of a Successful Bid, will include a copy of the final APA, with any non-confidential schedules, including the Assumed Contract Schedule. Within five (5) business days following conclusion of the Auction, the Successful Bidder shall be required to increase the amount of the Deposit on hand with the escrow agent to the amount equal to 10% of the total proposed purchase price set forth in the Successful Bidder's APA (provided, however, that the total Deposit required with respect to a bid that includes a Loan Assumption shall not be more than the amount of such bid minus the principal balance then outstanding under the W&D Note).

All bidders will be deemed to have consented to the core and exclusive jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any and all disputes relating to, arising from, or connected with the Auction, the marketing process, the Proposed Sale, and the construction and enforcement of any purchase agreement.

## XII.
## Back-Up Bidder

If there is an Auction, the Qualified Bidder that submits the second highest or otherwise best bid for each of the Sale Assets at the Auction shall be required to serve as the back-up bidder (the "Back-Up Bidder(s)") for such Sale Assets and keep such Back-Up Bidder's last bid (the "Back-Up Bid(s)") open and irrevocable until the date which is five days after the closing of the Proposed Sale to the Successful Bidder (the "Outside Back-Up Date"). If, after the Sale Hearing but prior to the Outside Back-Up Date for a Proposed Sale, any Successful Bidder fails to consummate or proceed with the relevant Proposed Sale because of a breach or failure to perform on the part of such Successful Bidder, the Back-Up Bidder for such Sale Assets will be deemed to have the new Successful Bid, and the Debtors will be authorized, without further order of the Bankruptcy Court, to consummate the Proposed Sale for such Sale Assets with the Back-Up Bidder. The Debtors will provide notice to the Consultation Parties of any failure by the Successful Bidder to close the Proposed Sale and the election to proceed to close a Proposed Sale with the Back-Up Bidder. Upon designation of a Back-Up Bidder's bid as the new Successful Bid, all requirements in these Bidding Procedures (including the requirement to increase the Deposit set forth in Section XI above) shall apply to such Back-Up Bidder.

## XIII.
## Right to Credit Bid

Any creditor that has a valid, perfected, unavoidable, and enforceable security interest (a "Security Interest") in the Sale Assets (any such creditor, a "Secured Creditor"), which Security Interest is not subject to any contest or dispute in these chapter 11 cases or otherwise, may make one or more credit bids for all or any portion of the secured claim(s) held by such Secured Creditor at the Auction, subject to the requirements of section 363(k) of the Bankruptcy Code (a "Credit Bid"). Any failure of a Secured Creditor to submit a Credit Bid does not impair the Secured Creditor's rights under Bankruptcy Code section 363(f) to not consent to a sale that is unacceptable to it, nor shall such failure to submit a Credit Bid be deemed acceptance of any Proposed Sale.

As of the entry of the Bidding Procedures Order, neither W&D nor HUD has consented to any Proposed Sale, and each of them has notified the Debtors that it reserves all rights with respect to any Proposed Sale unless and until all of LUVR's obligations to W&D under the W&D Note and any orders of the Bankruptcy Court, including any prepayment premium due under the W&D Note, are indefeasibly paid to W&D in full in cash at closing.

## XIV.
## The Sale Hearing and Return of Deposits

In the event one or more Proposed Sales are accepted by the Debtors, a hearing to approve the Sale(s) will take place before the Honorable United States Bankruptcy Judge Michelle V. Larson (the "Bankruptcy Judge") on **October 20, 2021 at 9:30 a.m. Central Time** (the "Sale Hearing") in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), at which time the Bankruptcy Court shall, among other things, consider the Sale Motion, the proposed Sale, and confirm the results of the Auction, if any. The Sale Hearing will be conducted as a hybrid electronic hearing. Parties wishing to participate in the Sale Hearing

will have the option to participate at a live hearing before the Bankruptcy Judge at the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Courtroom #2, 1100 Commerce Street, Dallas, Texas 75242. Parties wishing to participate in the Sale Hearing telephonically may do so by dialing in at (650) 479-3207 and using access code 160-135-6015. Parties wishing to participate in the Sale Hearing virtually may also participate by WebEx using the following link: https://us-courts.webex.com/meet/larson and by following the instructions set forth on the Bankruptcy Judge's web-page located at https://www.txnb.uscourts.gov/sites/txnb/files/hearings/WebEx%20Hearing%20Instructions%20for%20Judge%20Larson_3.pdf.

The Sale Hearing may be adjourned or rescheduled by the Debtors without notice other than by an announcement made at the Sale Hearing.

The Debtors will not be bound by a Successful Bid for a Proposed Sale or a Back-Up Bid for a Proposed Sale unless and until the Bankruptcy Court has approved the same. Following Bankruptcy Court approval of a Proposed Sale with the Successful Bidder, if the Successful Bidder fails to consummate the Proposed Sale for any reason, the Back-Up Bidder will be deemed to be the Successful Bidder and the Debtors will enter into a Sale with the Back-Up Bidder on the terms of the Back-Up Bid without any further order of the Bankruptcy Court, and the Debtors may pursue any and all available remedies against the Successful Bidder in connection with its failure to consummate the Sale.

The Deposit (together with interest, if any, thereon) of the Back-Up Bidder for a Proposed Sale will not be returned until two (2) business days following the closing of the Sale to the Successful Bidder. The Deposit (together with interest, if any, thereon) of all other Qualified Bidders will be returned within five business days after the Auction concludes. The Deposit of the Successful Bidder (together with interest, if any, thereon) shall be applied against the payment of the Proposed Sale consideration upon the closing of the Sale. In the event a Bidder fails to close as a result of its own default, its Deposit shall be released to, and retained by, the Debtors.

Deposits made by Potential Bidders who are not determined to be Qualified Bidders will be returned on October 8, 2021.

## XV.
## Reservation of Rights

Notwithstanding any term to the contrary herein, the Debtors, in consultation with the Consultation Parties, reserves the right to: (i) modify the Bidding Procedures at any time; (ii) determine which Qualified Bid, if any, is the highest or otherwise best offer; and (iii) reject at any time, any bid that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of the APA; or (c) contrary to the best interests of the Debtors, their estates, and creditors as determined by the Debtors in their sole discretion.

Notwithstanding any term to the contrary herein, W&D and HUD reserve their respective rights to contest the Proposed Sale for any reason provided by the Bankruptcy Code and applicable law.

[*Remainder of this page intentionally left blank*]

## **EXHIBIT A**

Certification of Controlling Participants

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| CITY WIDE COMMUNITY | § | Case No. 21-30847-mvl-11 |
| DEVELOPMENT CORPORATION, | § | |
| *ET AL.*,[1] | § | |
| | § | |
| Debtors | § | JOINTLY ADMINISTERED |

_____

## CERTIFICATION OF CONTROLLING PARTICIPANTS

Instructions: This Certification of Controlling Participants is to be completed and signed individually by each Controlling Participant of the individual(s) and/or entity(ies) (i) submitting information as a Potential Bidder for the Proposed Sale of the Sale Assets[2], and (ii) proposed to serve as a property manager for such Potential Bidder in the event the Potential Bidder is the Successful Bidder. The term "Controlling Participant" shall have the meaning given to it in 24 CFR part 200 § 200.212, and as further clarified by the Processing Guide (HUD notice H 2016-15) referenced in 24 CFR § 200.210(b) and available on the United States Department of Housing and Urban Development ("HUD") website at: http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/mfh/prevpart icipation. To the extent a Controlling Participant is unable to affirmatively answer the certifications listed below, such Controlling Participant shall include a written explanation for the inability to so certify.


I, [Name and Address of Controlling Participant], am hereby applying to HUD for approval to participate in the purchase of the Sale Assets, including the assets of Lancaster Urban Village Residential, LLC ("LUVR"), which are currently subject to the first-priority lien of Walker & Dunlop, LLC ("W&D") on, among other assets, LUVR's real estate, and all leases, rents, and proceeds of the same, and all or substantially all of LUVR's personal property. I understand that LUVR's obligations to W&D have been endorsed for insurance by HUD. All or a portion of the Potential Bidder's proposed purchase price for the purchase of the Sale Assets includes a Loan Assumption.

---

[1] The last four digits of the Debtors' tax identification numbers are: City Wide Community Development Corporation ("CWCDC") (8514); Lancaster Urban Village Commercial, LLC ("Commercial") (8989); and Lancaster Urban Village Residential, LLC ("Residential" and together with CWCDC and Commercial, the "Debtors") (1040).

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the *Order (A) Approving Bidding Procedures, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof, (C) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases and the Form and Manner of Notice Thereof; and (D) Granting Related Relief in Connection With the Debtors' Sale of Lancaster Urban Village* [Dkt No. ___].

I certify that the information provided on this form and in any accompanying documentation is true and accurate. I further certify to the truth and accuracy of the following:

1. Schedule A attached hereto contains a listing, for the last ten years, of every project assisted or insured by HUD, USDA FmHA[3] and/or State or local government housing finance agencies in which I have participated or am now participating. Such projects are hereafter referred to as "Assisted Projects".

2. For the period beginning 10 years prior to the date of this certification, and except as shown on this Certification:

   a. No mortgage on a project listed on Schedule A has ever been in default, assigned to the United States Government or foreclosed, nor has it received mortgage relief from the mortgagee;

   b. The Assisted Projects have had no defaults or noncompliance under any Conventional Contract or Turnkey Contract of Sale in connection with a public housing project;

   c. There are no known unresolved findings as a result of HUD audits, management reviews or other governmental investigations concerning the Assisted Projects or the controlling participants therein;

   d. There has not been a suspension or termination of payments under any HUD assistance contract due to the fault or negligence of any controlling participant in any of the Assisted Projects;

   e. I have not been convicted of a felony and am not presently the subject of a complaint or indictment charging a felony. (A felony is defined as any offense punishable by imprisonment for a term exceeding one year, but does not include any offense classified as a misdemeanor under the laws of a State and punishable by imprisonment of two years or less);

   f. I have not been suspended, debarred or otherwise restricted by any Department or Agency of the Federal Government or of a State Government from doing business with such Department or Agency;

   g. Neither I nor any of the Assisted Projects have defaulted on an obligation covered by a surety or performance bond and have not been the subject of a claim under an employee fidelity bond.

3. All of the names of the Controlling Participants who propose to participate with the purchase and/or operations of LUVR's assets are listed on the attached Schedule B.

---

[3] As used herein, FmHA means Farmers Home Administration.

4.  None of the Controlling Participants is a HUD/FmHA employee or a member of a HUD/FmHA employee's immediate household as defined in Standards of Ethical Conduct for Employees of the Executive Branch in 5 C.F.R. Part 2635 (57 FR 35006) and HUD's Standard of Conduct in 24 C.F.R. Part 0 and USDA's Standard of Conduct in 7 C.F.R. Part 0 Subpart B.

5.  None of the Controlling Participants is a participant in an assisted or insured project as of this date (a) on which construction has stopped for a period in excess of 20 days or (b) which has been substantially completed for more than 90 days and documents for closing, including final cost certification, have not been filed with HUD or FmHA.

6.  None of the Controlling Participants has been found by HUD or FmHA to be in noncompliance with any applicable fair housing and civil rights requirements in 24 CFR 5.105(a). (If any Controlling Participants have been found to be in noncompliance with any such requirements, attach a signed statement explaining the relevant facts, circumstances, and resolution, if any).

7.  None of the Controlling Participants is a Member of Congress or a Resident Commissioner or otherwise prohibited or limited by law from contracting with the Government of the United States of America.

Executed by _____
[Name]

4

## **EXHIBIT 3-A**

### **SALE NOTICE**

Kevin S. Wiley, Sr.
State Bar No. 21470700
**THE WILEY LAW GROUP, PLLC**
325 N. St. Paul Street, Suite 2250
Dallas, Texas 75201
Telephone: (214) 537-9572
Facsimile: (972) 449-5717
kwiley@wileylawgroup.com

**COUNSEL FOR DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| CITY WIDE COMMUNITY | § | Case No. 21-30847-mvl-11 |
| DEVELOPMENT CORPORATION, | § | |
| *ET AL.*,[1] | § | |
| | § | |
| Debtors | § | JOINTLY ADMINISTERED |

## NOTICE OF BID DEADLINE, AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that on August 9, 2021, City Wide Community Development Corporation ("CWCDC"), Lancaster Urban Village Commercial, LLC ("LUVC"), and Lancaster Urban Village Residential, LLC ("LUVR" and together with CWCDC and LUVC, the "Debtors"), filed their *Motion for Entry of One or More Orders (I) (A) Approving Bid Procedures, (B) Scheduling a Bid Deadline, Auction Date, and Sale Hearing, and Approving the Form and Manner of Notice Thereof, (C) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases and the Form and Manner of Notice Thereof; and (II) (A) Approving the Sale of the Debtors' Interests in Lancaster Urban Village Free and Clear of All Liens, Claims, Interests, and Encumbrances, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 157] (the "Sale Motion").

**PLEASE TAKE FURTHER NOTICE** that on August 25, 2021, the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") entered its *Order (A) Approving Bidding Procedures, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof, (C) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases and the Form*

---

[1] The last four digits of the Debtors' tax identification numbers are: City Wide Community Development Corporation ("CWCDC") (8514); Lancaster Urban Village Commercial, LLC ("Commercial") (8989); and Lancaster Urban Village Residential, LLC ("Residential" and together with CWCDC and Commercial, the "Debtors") (1040).

*and Manner of Notice Thereof; and (D) Granting Related Relief in Connection with the Debtors' Sale of Lancaster Urban Village* [Docket No. ☐] (the "Bidding Procedures Order") approving certain bidding procedures attached thereto as **Exhibit 1** (the "Bidding Procedures").

**PLEASE TAKE FURTHER NOTICE** that all interested parties are invited to seek to become a Qualified Bidder and submit a Qualified Bid to purchase all or a portion of the Sale Assets (as defined in the Bidding Procedures Order) in accordance with the terms of the Bidding Procedures Order and the Bidding Procedures. The deadline for Potential Bidders to submit Qualified Bids is **October 4, 2021, at 4:00 p.m. Central Time.**

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Bidding Procedures Order, unless cancelled, an Auction will take place on **October 13, 2021** commencing at **10:00 a.m**. **Central Time,** virtually and/or at the offices of Debtors' counsel, Kevin S. Wiley, Sr., The Wiley Law Group, PLLC, 325 N. St. Paul Street, Suite 2750, Dallas, TX 75201 (the "Auction"). The Auction will proceed, and be conducted, pursuant to the terms of the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the sale of the Debtors' interests in Lancaster Urban Village, including the assumption and assignment of any executory contracts (the "Sale Hearing"), will take place before the Honorable United States Bankruptcy Judge Michelle V. Larson (the "Bankruptcy Judge") on **October 20, 2021 at 9:30 a.m. Central Time** in the Bankruptcy Court. The Sale Hearing will be conducted as a hybrid electronic hearing. Parties wishing to participate in the Sale Hearing will have the option to participate at a live hearing before the Bankruptcy Judge at the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Courtroom #2, 1100 Commerce Street, Dallas, Texas 75242. Parties wishing to participate in the Sale Hearing telephonically may do so by dialing in at (650) 479-3207 and using access code 160-135-6015. Parties wishing to participate in the Sale Hearing virtually may also participate by WebEx using the following link: https://us-courts.webex.com/meet/larson and by following the instructions set forth on the Bankruptcy Judge's web-page located at https://www.txnb.uscourts.gov/sites/txnb/files/hearings/WebEx%20Hearing%20Instructions%20for%20Judge%20Larson_3.pdf.

As set forth in the Bidding Procedures, the Auction and the Sale Hearing may be cancelled, with a notice of cancellation to be filed by the Debtors with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion and the Proposed Sale (a "Sale Objection") shall be filed with the Bankruptcy Court and served on the following parties so as to be actually received no later than **4:00 p.m. Central Time on September 24, 2021** (the "Sale Objection Deadline"): (i) counsel to the Debtors, The Wiley Law Group, PLLC, 325 N. St. Paul Street, Suite 2250, Dallas, TX 75201 (Attn: Kevin S. Wiley, Sr.); (b) the Office of the United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242 (Attn: Nancy S. Resnick); (c) counsel to W&D, Vorys, Sater, Seymour and Pease LLP, Attn: Jeffrey A. Marks and Kari Balog Coniglio, 301 East Fourth Street, Suite 3500, Great American Tower, Cincinnati, OH 45202; (d) First Choice, 3180 Pearson Rd., Memphis, TN 38118; (e) counsel to the United States, Christopher K. VanDeusen, U.S. Department of Justice, 1100 L St NW, Room 7532, Washington, DC 20005; (f) counsel to COD, James Richards, Office of the City Attorney, 1500 Marilla, 7BN, Dallas, TX 75201; (g) Prosperity, 1205 n. Navarro St., Victoria, TX 77901; (h) ST&H, 1508 Sante Fe Dr., #202, Weatherford, TX 76086; (i) counsel to Tax Core, Spector &

Cox, PLLC, Attn: Howard Marc Spector, 12770 Coit Road, Suite 850, Dallas, TX 75251; (j) counsel to Catalyst, Locke Lord LLP, Attn: Johnathan W. Young and Stephen J. Humeniuk, 600 Congress Avenue, Suite 2200, Austin, TX, 78701; and (k) counsel to any statutory committee. Any objections to the Auction, including any issues relating to the identification of the Successful Bidder and/or the proposed purchase price, may be asserted at any time prior to the Sale Hearing by filing an objection with the Bankruptcy Court, or by asserting such objection at the Sale Hearing (each such objection, an "<u>Auction Objection</u>")

**PLEASE TAKE FURTHER NOTICE** that the failure to timely file and serve a Sale Objection by the Sale Objection Deadline or an Auction Objection by the Sale Hearing shall be a bar to the assertion prior to, at, or after the Sale Hearing, of any such objection to the Motion, any proposed sale, the Debtors' consummation of any proposed sale, or the proposed assumption and assignment of any executory contracts or unexpired leases. Failure to file and serve a Sale Objection by the Sale Objection Deadline or to assert an Auction Objection prior to or at the Sale Hearing shall be deemed to be consent to the proposed sale for purposes of Bankruptcy Code section 363(f) and a waiver of any preferential purchase rights or other similar rights to acquire any of the Debtors' interests in the Sale Assets.

**PLEASE TAKE FURTHER NOTICE** that copies of pleadings related to the proposed sale(s), including the Bidding Procedures Order (and attached Bidding Procedures) approved by the Bankruptcy Court, are available on the Bankruptcy Court's website at http://ecf.txs.uscourts.gov/ or by contacting Debtors' counsel via email at the addresses listed above.

Respectfully submitted this ___ day of August, 2021.

*/s/ Kevin S. Wiley, Sr.*
THE WILEY LAW GROUP, PLLC
State Bar No. 21470700
325 N. St. Paul Street, Suite 2250
Dallas, Texas 75201
Telephone: 972-913-2683 or 214-537-9572
Telecopier: 972-449-5717
Email: kwiley@wileylawgroup.com

*Counsel for Debtors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August __, 2021, a true and correct copy of this *Notice of Bid Deadline, Auction, and Sale Hearing* has been served (i) electronically via CM/ECF on all parties who have subscribed for electronic notice in this case, (ii) via first class U.S. mail on all parties listed on the Debtors' Official Service List and (iii) via first class U.S. mail or email if available to (a) all potential buyers identified or solicited by the Debtors or Hilco Real Estate, LLC ("Hilco"), and any additional parties who have expressed an interest to the Debtors or Hilco in potentially acquiring Lancaster Urban Village, (b) other potentially interested parties identified by the Debtors or its advisors; (c) counterparties to the Debtors' executory contracts and unexpired non-residential leases; (d) any parties that have asserted a lien or security interest against or any other interest in, including, without limitation, preferential purchase rights or rights of first refusal on, any of the Debtors' assets constituting Lancaster Urban Village; (e) any taxing authorities related to Lancaster Urban Village; and (f) all parties who have requested notice in these cases.

*/s/ Kevin S. Wiley, Sr.*
Kevin S. Wiley, Sr.

## **EXHIBIT 3-B**

## **RESIDENTIAL TENANT NOTICE**

[Lancaster Urban Village Residential, LLC letterhead]

August __, 2021

To:        Tenants of Lancaster Urban Village
From:    Lancaster Urban Village Residential, LLC (Landlord)
Subject:  Notice of Sale of Lancaster Urban Village

Dear Tenants:

We are writing to notify you that we are currently in the process of seeking approval from the United States Bankruptcy Court of a potential sale of Lancaster Urban Village.[1] If the sale is approved, it will result in your lease being transferred to the buyer. Under U.S. bankruptcy law, the buyer will be responsible for all of the Landlord's obligations under the lease, and your obligations as tenant under the lease will not be changed.

If you believe that the Landlord owes you money for any reason other than the return of your security deposit in the future in accordance with your lease, then you must file with the U.S. Bankruptcy Court a written objection stating the amount owed to you and the reasons why you are owed this amount. Also, if you believe that the Landlord has violated the terms of your lease, then you must file with the U.S. Bankruptcy Court a written objection explaining the details of the Landlord's violation, including whether you believe the Landlord owes you money as a result of the violation claimed by you and the amount of money.

Also, if you believe that there is any other reason why the Landlord is not legally permitted to transfer your lease to the buyer, then you must file with the U.S. Bankruptcy Court a written objection stating the grounds for your belief.

Any of the objections described above that you may wish to file (1) must be in writing, (2) must refer to "Case No. 21-30847-mvl-11", and (3) must be mailed to the Clerk, United States Bankruptcy Court at the following address so as to be received no later than September 24, 2021: United States Bankruptcy Court, Earle Cabell Federal Building, 1100 Commerce St., Rm 1254, Dallas, TX 75242.

The U.S. Bankruptcy Court has approved the form of this notice. Please understand that the employees of the U.S. Bankruptcy Court are not permitted to give legal advice; therefore, you should not contact the Court to seek legal advice.

Thank you.

_____ _____
Sherman Roberts, Director, Lancaster Urban Village Residential, LLC

---

[1] The sale process is taking place in our Chapter 11 bankruptcy case: *In re City Wide Community Development Corporation, et al.*, Case No. 21-30847-mvl-11, in the U.S. Bankruptcy Court, Northern District of Texas, Dallas Division.

**<u>EXHIBIT 4</u>**

**CURE NOTICE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| CITY WIDE COMMUNITY | § | Case No. 21-30847-mvl-11 |
| DEVELOPMENT CORPORATION, | § | |
| *ET AL.*,[1] | § | |
| | § | |
| Debtors | § | JOINTLY ADMINISTERED |

**NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**
**SUBJECT TO POSSIBLE ASSUMPTION AND ASSIGNMENT AND**
**PROPOSED CURE AMOUNTS AND OBJECTION DEADLINES**

> **PLEASE TAKE NOTICE** that pursuant to the terms of that certain *Order (A) Approving Bidding Procedures, (B) Scheduling Bid Deadline, Auction Date, and Sale Hearing and Approving Form and Manner of Notice Thereof, (C) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases and the Form and Manner of Notice Thereof; and (D) Granting Related Relief in Connection with the Debtors' Sale of Lancaster Urban Village* [Docket No. ▮] (the "Bidding Procedures Order")[2], City Wide Community Development Corporation ("CWCDC"), Lancaster Urban Village Commercial, LLC ("LUVC"), and Lancaster Urban Village Residential, LLC ("LUVR" and together with CWCDC and LUVC, the "Debtors"), may hold an Auction for the sale of substantially all of their interests in the Sale Assets (as defined in the Bidding Procedures Order) on **October 4, 2021** commencing at **10:00 a.m**. **Central Time,** virtually and/or at the offices of Debtors' counsel, Kevin S. Wiley, Sr., The Wiley Law Group, PLLC, 325 N. St. Paul Street, Suite 2750, Dallas, TX 75201 (the "Auction").

> **PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bidding Procedures Order, the Debtors hereby provide their notice (the "Cure Notice") of proposed cure amounts (each a "Cure Amount" and collectively, the "Cure Amounts") for all contracts and leases subject to potential assumption and assignment to the successful bidder(s) at Auction.

> **PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit 1** are schedules of the executory contracts and unexpired non-residential leases (collectively, the "Potential Assumed Contracts and Leases") that may be included as part of the sale of the Debtors' interests in the Sale Assets and the proposed Cure Amount for each such lease or contract.

> **PLEASE TAKE FURTHER NOTICE** that any objection to any proposed Cure Amount for any Potential Assumed Contract and Lease must be (a) in writing, (b) state the basis for such objection with specificity, (c) conform to the Bankruptcy Rules and Local Rules of the Northern

---

[1] The last four digits of the Debtors' tax identification numbers are: City Wide Community Development Corporation ("CWCDC") (8514); Lancaster Urban Village Commercial, LLC ("Commercial") (8989); and Lancaster Urban Village Residential, LLC ("Residential" and together with CWCDC and Commercial, the "Debtors") (1040).

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Bidding Procedures Order.

District of Texas, and (d) be filed with the Bankruptcy Court on or before **4:00 p.m. Central Time on September 24, 2021.** Any other objection to the proposed assumption and assignment of the Potential Assumed Contracts and Leases, including, without limitation, on the basis of lack of adequate assurance of future performance under Bankruptcy Code section 365(b)(1) and/or 365(f), must be (a) in writing, (b) state the basis for such objection with specificity, (c) conform to the Bankruptcy Rules and Local Rules of the Northern District of Texas, and (d) be filed with the Bankruptcy Court on or before the commencement of the Sale Hearing, which is scheduled to be held on **October 20, 2021, at 9:30 a.m. (Central Time).**

      **PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order, the Cure Amounts set forth in the Cure Notice shall be binding on all parties unless an objection thereto is timely filed with the Bankruptcy Court. If an objection to the assumption and assignment of the Potential Assumed Contracts and Leases or to the Cure Notice and any Cure Amount cannot be resolved consensually among the parties, the Bankruptcy Court will set a hearing to determine such matters as soon thereafter as is practicable, and the Debtors are permitted to give notice only to the objecting party and those parties who have filed a notice of appearance. The failure to timely file an objection with the Bankruptcy Court shall be deemed consent to the assumption and assignment of the Potential Assumed Contracts and Leases and to the Cure Amounts, and any and all objections thereto shall be deemed forever released and waived.

      **PLEASE TAKE FURTHER NOTICE** that the inclusion of any contracts or leases on **Exhibit 1** hereto shall not constitute or be deemed to be a determination or admission by the Debtors that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

      Respectfully submitted this ___ day of August, 2021.

               */s/ Kevin S. Wiley, Sr.*

               THE WILEY LAW GROUP, PLLC
               State Bar No. 21470700
               325 N. St. Paul Street, Suite 2250
               Dallas, Texas 75201
               Telephone: 972-913-2683 or 214-537-9572
               Telecopier: 972-449-5717
               Email: kwiley@wileylawgroup.com

               *Counsel for Debtors*

## CERTIFICATE OF SERVICE

      I do hereby certify that on August ___, 2021 a true and correct copy of the foregoing pleading was served via CM/ECF to all parties authorized to receive electronic notice in this case and on the parties appearing on the attached service list via first class U.S. mail, postage prepaid.

               */s/*
               Kevin S. Wiley, Sr.

**<u>Exhibit 1</u>**

**Schedule of Executory Contracts and Unexpired Leases & Proposed Cure Amounts**